**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Ricardo J. GRAHAM,**
**Defendant-Appellant.**

**No. 80–1206.**

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 30, 1980.

Decided Jan. 27, 1981.

William Levinson, Chicago, Ill., for defendant-appellant.

James R. Ferguson, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellee.

Before FAIRCHILD, Chief Judge, and PELL and BAUER, Circuit Judges.

PELL, Circuit Judge.

Defendant-appellant, Ricardo J. Graham, appeals his conviction for knowingly possessing a stolen United States Treasury check in violation of 18 U.S.C. § 1708. His sole claim on appeal is that the district court erred in denying his motion to suppress the check as the fruit of an illegal search.

The facts of the case are relatively simple. On May 18, 1977, Investigator Richard Peck of the Chicago Police Department obtained a warrant from a Cook County judge authorizing the search of defendant's person and apartment for cocaine, marijuana, and any instrumentalities constituting evidence of their possession. Investigator Peck proceeded with three other Chicago police officers to the defendant's apartment at 7643 South Saginaw in the City of Chicago. When they arrived, the defendant was not there. At approximately 5:00 p. m., the defendant and a female companion arrived in a van. As the defendant was exiting the van, the officers approached him, identified themselves as police officers and informed him that they had a warrant to search his person.

During this period, the defendant was wearing a shoulder bag or purse. Investigator Peck removed the bag and, as one of the other officers patted the defendant down and searched his clothing, Peck examined its contents. He discovered in the bag a small quantity of marijuana and a United States Treasury check made payable to Herman and Linda Washington. At that point he placed the defendant under arrest.

On the basis of the testimony and other evidence presented at the hearing, the trial court concluded that the defendant's purse was part of his person at the time he was accosted by the police and that the search of it was incident to the proper exercise of the warrant. Accordingly, it denied the defendant's motion to suppress. Following a trial to the bench, the defendant was found guilty and sentenced to three years probation.

The defendant's primary contention on appeal is that the search of his shoulder purse, once it was removed from his person and held within the exclusive control of the police, was unlawful, and the evidence seized from it should therefore have been suppressed. In support of this contention he argues primarily from the decision of the Illinois Appellate Court in *People v. Redmond*, 73 Ill.App.3d 160, 28 Ill.Dec. 774, 390 N.E.2d 1364 (1979), and its interpretation of

*United States v. Chadwick,* 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977).

In *United States v. Chadwick, supra,* the Supreme Court rejected the contention that the warrantless search of a two hundred pound footlocker more than an hour after it had been removed from the trunk of the arrestee's car and taken to the police station was justified as a search incident to a lawful arrest. In rejecting this contention, the Court stated:

> . . . Once law enforcement officers have reduced luggage or other personal property not immediately associated with the person of the arrestee to their exclusive control, and there is no longer any danger that the arrestee might gain access to the property to seize a weapon or destroy evidence, a search of that property is no longer an incident of the arrest.

*Id.* 433 U.S. at 15, 97 S.Ct. at 2485.

In *People v. Redmond, supra,* the Illinois Appellate Court applied *Chadwick* to suppress evidence seized in the search of a shoulder purse similar to the one worn by the defendant here. The defendant in *Redmond* was placed under arrest for a vehicle registration law violation. When the arresting officers attempted to take the defendant into custody, a struggle ensued during which the shoulder purse worn by the defendant fell to the ground. After the defendant had been subdued, handcuffed and placed in the back seat of the squad car, one of the officers retrieved the purse from the ground and searched it. Several envelopes containing marijuana were discovered in the purse.

At the defendant's trial, in response to a motion to suppress, the state claimed that the evidence was seized in the course of a valid search incident to an arrest. The Illinois court reviewed a number of cases delineating the legitimate scope of a search incident to an arrest, including *United States v. Chadwick, supra,* and concluded that the circumstances existing at the time of the defendant's arrest did not justify the search of his purse. It therefore granted the defendant's motion.

Although he concedes the officers in the instant case had a valid warrant authorizing the search of his person, the defendant nevertheless argues that the same conclusion follows here. The warrant, he contends, authorized only the search of his person, not his purse. To determine whether the search of his purse was lawful it is necessary, he argues, to look to the law governing the scope of searches incident to arrest. That law, he states, as enunciated by the Supreme Court in *United States v. Chadwick* and interpreted by the Illinois Appellate Court in *People v. Redmond,* clearly indicates that the challenged search was illegal.

The defendant is mistaken not only in his assumption that the search conducted here is no different than a warrantless search incident to a lawful arrest, but also in his understanding of the legitimate scope of a search incident to arrest.

In *United States v. Garcia,* 605 F.2d 349 (7th Cir. 1979), *cert. denied,* 446 U.S. 984, 100 S.Ct. 2966, 64 L.Ed.2d 841 (1980), this court recently held that two suitcases which were immediately dropped by their owner as she was placed under arrest, and which were then removed, along with their owner, from the doorway of a busy airport terminal, were within the legitimate scope of a search incident to the arrest. In upholding the search of the suitcases, the court rejected the contention that the mere fact that they had been dropped by the arrestee and moved several feet by the police placed them within the "exclusive control" of the police, as that term was used in *Chadwick,* thereby negating the justification for the search:

> . . . [T]o construe the term 'exclusive control' as meaning it attaches immediately upon seizure of an object located on the person or within the immediate vicinity of the arrestee, is a construction incapable of application consistent with fundamental principles of constitutional law. Under such a construction, for example, the warrantless search of an arrestee resulting in the seizure of a wallet, purse, or shoulder bag would prohibit an imme-

diate search of the contents of that type of container, and this is plainly contrary to the law governing searches incident to arrest.

*Id.* 605 F.2d at 355.

■ Thus, even if defendant was correct in his contention that the law governing searches incident to arrest applied, the search of his shoulder purse was clearly within the scope of such a search, and the seizure of the check would therefore not have been improper.

At a more fundamental level, however, defendant is also mistaken in his contention that the rationale used to define the scope of a search incident to an arrest is equally applicable in defining the scope of a search of the person authorized by a warrant.

■ A search incident to an arrest is an exception to "the prevailing rule that warrantless searches are *per se* unreasonable." *United States v. Garcia, supra,* 605 F.2d at 352. As such, the scope of such a search has been narrowly drawn and carefully delineated to accommodate only those interests it was created to serve. *Arkansas v. Sanders,* 442 U.S. 753, 99 S.Ct. 2586, 2591, 61 L.Ed.2d 235 (1979). Those interests include the protection of law enforcement officers effecting an arrest from the danger of the arrestee having an easily retrievable weapon concealed on his person or in the immediate area, and the protection of society from the loss of similarly situated evidence susceptible to destruction or concealment by the arrestee. *Chimel v. California,* 395 U.S. 752, 762–3, 89 S.Ct. 2034, 2039–40, 23 L.Ed.2d 685 (1969). The scope of the search allowed is no broader than is necessary to protect against these dangers and, where they do not exist, neither does the justification for the search. *United States v. Chadwick, supra,* 433 U.S. at 15, 97 S.Ct. at 2485. Thus, for example, in *People v. Redmond, supra,* the Illinois court concluded that, once the defendant was handcuffed and seated in the police squad car, and his purse was in the possession of the police, the reasons justifying a search incident to his arrest no longer existed with respect to the purse. Since, in the opinion of the Illinois court, the reasons justifying the search did not exist, neither did the officers' right to conduct the search.

■ In the case at bar, however, because the search of the defendant was duly authorized by a warrant and not merely incident to his arrest, its scope was not so limited. A warrant authorizes the police to search for evidence regardless of whether there is any danger of a weapon being drawn or evidence destroyed. Thus, the fact that the purse had been removed from defendant's person and was in the possession of the police officers is immaterial. The only relevant question is whether, at the time the warrant was executed, the purse could be properly considered part of the defendant's person which the officers were authorized to search.

■ While we have been unable to locate any authority directly bearing on this question, it is our opinion that a shoulder purse carried by a person at the time he is stopped lies within the scope of a warrant authorizing the search of his person. The human anatomy does not naturally contain external pockets, pouches, or other places in which personal objects can be conveniently carried. To remedy this anatomical deficiency clothing contains pockets. In addition, many individuals carry purses or shoulder bags to hold objects they wish to have with them. Containers such as these, while appended to the body, are so closely associated with the person that they are identified with and included within the concept of one's person. To hold differently would be to narrow the scope of a search of one's person to a point at which it would have little meaning. We decline to do so. While we recognize the important privacy interests that normally attend one's purse, the fact that a warrant authorizing the search of the person has been properly issued insures that the intrusion is constitutionally justified. We therefore hold that the search of the defendant's purse was within the lawful scope of the search authorized by the warrant.

■ The defendant also contends that his motion to suppress should have been grant-

ed because the article seized by the officers was outside the purview of the warrant. The warrant specifically authorized the search of the defendant's person and his apartment for marijuana, cocaine, and instrumentalities constituting evidence of their possession. In seizing a United States Treasury check, defendant contends, the officers exceeded the scope of the warrant and thereby violated his Fourth Amendment right to be free of unreasonable government intrusions.

This argument is without merit. Where a police officer conducting a valid search inadvertently comes across an article not specified in the warrant, but one nevertheless having an incriminating character, it is well established that he may seize that article as well as any others that are specified in the warrant. *Coolidge v. New Hampshire*, 403 U.S. 443, 465, 91 S.Ct. 2022, 2037, 29 L.Ed.2d 564 (1971); *United States v. Schire*, 586 F.2d 15, 17 (7th Cir. 1978). The seizure of the stolen United States Treasury check from defendant's purse clearly falls within this rule. The search of the purse, as concluded above, was lawful, and the incriminating character of the stolen check was apparent. Under these circumstances the seizure of the check was proper. Accordingly, the judgment of the district court is affirmed.