COURT OF APPEALS OF VIRGINIA


Present:  Judges Elder, Bray and Annunziata
Argued at Richmond, Virginia


KAREEN LATIF EDWARDS
                                         OPINION BY
v.    Record No. 1293-01-1       JUDGE ROSEMARIE ANNUNZIATA
                                        AUGUST 27, 2002
COMMONWEALTH OF VIRGINIA


        FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
                Junius P. Fulton, III, Judge

        William P. Robinson, Jr. (Robinson, Neeley &
        Anderson, on brief), for appellant.

        Marla Graff Decker, Assistant Attorney
        General (Jerry W. Kilgore, Attorney General,
        on brief), for appellee.


     Kareen Latif Edwards pled guilty to possession of cocaine

with the intent to distribute, conditioned upon his ability to

appeal the trial court's order denying his motion to suppress

evidence.  He was convicted by the trial court and sentenced to

twenty years in prison, with fifteen years suspended.  Edwards

appeals from the trial court's denial of his motion to suppress

evidence.  For the reasons that follow, we affirm.

### Background

     On February 20, 2000, Officer Michael Reardon investigated

Room 256 at the Econo Lodge at 1111 East Ocean View in Norfolk

based on an informant's tip that two individuals were selling

narcotics from that location, one of whom was known as "E." When Officer Reardon had "just about finished up" his search of the room, Edwards knocked on the door and entered carrying a clear plastic bag of women's white tube socks. Edwards identified himself as "E."

Officer Reardon told Edwards that he understood Edwards was a supplier of cocaine to a variety of locations in the Ocean View area, including three locations at the motel. The officer then asked Edwards for consent to search his person. While holding the bag of socks, Edwards responded, "[s]ure, no problem."

Edwards put the bag of socks on the bed and cooperated with the search. Officer Reardon searched him but did not find any narcotics. Reardon picked up the bag and asked the defendant what he was doing with a bag of women's white tube socks. Reardon immediately noticed a lumpy object inside the tube socks. He looked inside the bag and found two plastic sandwich bags inside the socks. One bag contained fifty zip-lock baggies of crack cocaine, and the other contained twenty-five zip-lock baggies of crack cocaine.

Edwards moved to suppress the evidence found in the socks on the ground that the search of the bag violated his Fourth Amendment right to be protected against unreasonable searches.

-

The trial court denied his motion, finding that he consented to the search.

## Analysis

Edwards appeals the trial court's denial of his motion to suppress the evidence of crack cocaine found in the baggies.[1] Specifically, he contends that the warrantless search was unreasonable because his consent to search his person did not extend to the bag. We disagree.

On appeal of a ruling on a motion to suppress, we view the evidence in the light most favorable to the party prevailing below, granting to it all reasonable inferences fairly deducible therefrom. Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991). "[W]e are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them[,] and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers." McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (en banc) (citing Ornelas v. United States, 517 U.S. 690, 699 (1996)). However, we review de novo the trial court's application of defined legal standards. Ornelas, 517 U.S. at 699. "Both the presence of

---

[1] The Commonwealth also argues that the officer had probable cause to arrest Edwards and, therefore, lawfully searched the bag. Because the trial court did not consider this argument, we do not address it on appeal.

-

consent to search and any related limitations are factual issues for the trial court to resolve after consideration of the attendant circumstances."  Bynum v. Commonwealth, 23 Va. App. 412, 418, 477 S.E.2d 750, 753 (1996).

"A consensual search is reasonable if the search is within the scope of the consent given."  Grinton v. Commonwealth, 14 Va. App. 846, 850, 419 S.E.2d 860, 862 (1992).

> The United States Supreme Court has articulated the standard for measuring the scope of an individual's consent under the Fourth Amendment to be "'objective' reasonableness—what would the typical person have understood by the exchange between the officer and the suspect?"  Florida v. Jimeno, 500 U.S. 248, 251 (1991). Furthermore, the Court stated that, "[t]he scope of a search is generally defined by its expressed object."  Id.

Bolda v. Commonwealth, 15 Va. App. 315, 317, 423 S.E.2d 204, 206 (1992) (quoted in Bynum, 23 Va. App. at 418, 477 S.E.2d at 753). "'A suspect may of course delimit as he chooses the scope of the search to which he consents.  But if his consent would reasonably be understood to extend to a particular container, the Fourth Amendment provides no grounds for requiring a more explicit authorization.'"  Lawrence v. Commonwealth, 17 Va. App. 140, 145, 435 S.E.2d 591, 594 (1993) (quoting Jimeno, 500 U.S. at 252).

Whether consent to search one's person includes containers such as a purse or bag held by that person is a matter of first

-

impression in Virginia. We are, however, guided by the reasoning of several of our sister courts considering the import of the term "person" in the context of the search of a person pursuant to a warrant. For example, in United States v. Graham, the Seventh Circuit Court of Appeals concluded that the defendant's shoulder purse could be considered part of "his person." See 638 F.2d 1111, 1114 (7th Cir. 1981) (holding that search of defendant's purse, which he carried, was authorized by a warrant to search "his person"). In holding that such objects are within the scope of the search of a person, the Court noted:

> The human anatomy does not naturally contain external pockets, pouches, or other places in which personal objects can be conveniently carried. To remedy this anatomical deficiency clothing contains pockets. In addition, many individuals carry purses or shoulder bags to hold objects they wish to have with them. Containers such as these, while appended to the body, are so closely associated with the person that they are identified with and included within the concept of one's person. To hold differently would be to narrow the scope of a search of one's person to a point at which it would have little meaning.

Id. Several other jurisdictions have similarly concluded that the search of a person includes containers held by the person. See United States v. Robertson, 833 F.2d 777, 784 (9th Cir. 1987) (holding that search of backpack constituted a search of defendant's person and was not authorized by search warrant for premises); Minnesota v. Wynne, 552 N.W.2d 218, 220 (Minn. 1996)

-

(concluding that search of defendant's purse constituted a search of her person); Wisconsin v. Andrews, 549 N.W.2d 210, 216, 218 (Wis. 1996) (noting that items worn by, or appended to the body of, a person are included within the concept of the person and, therefore, are not encompassed by a search warrant that does not specifically authorize a search of the person); Hayes v. Georgia, 234 S.E.2d 360, 361-62 (Ga. Ct. App. 1977) (holding that search of appellant's suitcase, found on the floor next to the couch on which he was sleeping, was an unconstitutional search of his person and was not authorized by a search of the residence); cf. United States v. Branch, 545 F.2d 177, 182 (D.C. Cir. 1976) (holding that search of shoulder bag was not authorized by search warrant for apartment).

We, therefore, hold that the scope of consent to search one's person encompasses such items. Although the cases we find persuasive on the issue before us were decided in the context of a search pursuant to a search warrant, and not pursuant to consent, we find nothing in the reasoning or the holdings of the courts deciding the issue that suggests the analogy is inapt. Indeed, the circumstances requiring a definition of "the person" in the context of conducting a search pursuant to a search warrant are comparable to those in which the police acted in this case. In both instances, the officers had to determine whether the scope of the permitted search--one permitted on the

basis of a search warrant of "the person,"--the other pursuant to consent to search of "the person," included bags and other such items appended or otherwise closely associated with the individual. In both instances, the acting officer was presented with the need to determine whether the authority granted to search "the person" extended to such items. The different premises underlying the authority to search the person do not change the ultimate question to be resolved, to wit, the scope of the term, "the person."

In this case, Edwards was holding the bag of women's white tube socks when he consented to the search of his person. Thus, the bag was "appended to," or intimately connected with, his person. Cf. Jean-Laurent v. Commonwealth, 34 Va. App. 74, 80, 538 S.E.2d 316, 319 (2000) (search of defendant's suitcase was not authorized by defendant's consent to "search his person," where he consented while in a bus terminal and his suitcase remained on the bus). He also understood that the object of the search was evidence related to cocaine distribution, which could possibly be found within the bag. See Jimeno, 500 U.S. at 251 ("The scope of a search is generally defined by its expressed object."). Thus, the trial court's determination that Officer Reardon understood Edwards' consent to include the container that he carried was reasonable and not plainly wrong.

To the extent that Edwards thereafter made the scope of his consent less clear by placing the bag on the bed before the officer began the pat-down, his passive acquiescence while the officer searched the bag affirmed that the bag was within the scope of his consent.  See Grinton, 14 Va. App. at 451, 419 S.E.2d at 863 ("The scope of a search may be further defined during the course of the search by the passive acquiescence of the person whose property is being searched."); United States v. Rison, 946 F.2d 1497, 1501 (10th Cir. 1991); United States v. Espinosa, 782 F.2d 888, 892 (10th Cir. 1986) ("Failure to object to the continuation of the search . . . may be considered an indication that the search was within the scope of the consent."); McNair v. Commonwealth, 31 Va. App. 76, 83, 521 S.E.2d 303, 307 (1999) (holding that defendant's failure to withdraw consent to search for "criminal activity" in his home included the top floor because he did not withdraw his consent to search when he observed the officer go upstairs).  In Grinton, the defendants expressly consented to a search of "the contents and containers" of their vehicle.  14 Va. App. at 851, 419 S.E.2d at 863.  Although this consent did not expressly include the trunk, they did not object or withdraw consent when the officer searched the trunk of the car.  Id.  We thus held that the defendants' acquiescence in the search of the trunk clarified that their consent included the trunk.  See id.

-

Likewise in Rison, the defendant claimed that the trooper exceeded the scope of his consent to search "the glove box, the trunk and the remainder of his vehicle" when the trooper searched underneath the back seat of the vehicle. 946 F.2d at 1501. The defendant, however, standing only five feet from the automobile during the search, did not object to the search of the back seat. On these facts, the court held that "it would be reasonable to conclude that defendant's acquiescence indicated that the search was within the scope of the consent." Id.

Similarly, Edwards, after consenting to the search of "his person," which could reasonably be understood to include the bag he held, stood in close proximity to the officer when he began to search the bag and did not object, withdraw his consent, or otherwise limit the scope of his consent. See Grinton, 14 Va. App. at 851, 419 S.E.2d at 863 (holding that once initial consent to search has been given, "passive acquiescence" broadens the scope of search); McNair, 31 Va. App. at 83, 521 S.E.2d at 307 (holding that failure to withdraw consent was evidence that defendant consented to search in progress); cf. Hughes v. Commonwealth, 31 Va. App. 447, 458, 514 S.E.2d 155, 161 (2000) (en banc) (holding that acquiescence to a strip and body cavity search did not extend the scope of defendant's consent to search his person because of the highly intrusive nature of the search). Edwards' initial consent to the search

-

of his person, together with his subsequent passive acquiescence to the search of his bag, would lead a reasonable officer to believe that Edwards' consent to the search included the bag he carried.  Therefore, we hold that the trial court did not err in denying Edward's motion to suppress and affirm his conviction.

Affirmed.

Elder, J., dissenting.

I would hold, as a matter of law, that the search of Edwards (appellant) exceeded the scope of his consent to search. I also would hold that the search was not valid as incident to a lawful arrest because the officer lacked probable cause to believe appellant had committed a narcotics offense. Thus, I would hold the trial court's denial of the motion to suppress was erroneous, and I would reverse and dismiss the challenged conviction.

## A.

### SCOPE OF CONSENT TO SEARCH

"A consensual search is reasonable if the search is within the scope of the consent given." Grinton v. Commonwealth, 14 Va. App. 846, 850, 419 S.E.2d 860, 862 (1992). Consent may be express or implied. Jean-Laurent v. Commonwealth, 34 Va. App. 74, 79, 538 S.E.2d 316, 318 (2000). The scope of the consent is viewed under a standard of "'objective' reasonableness--what would the typical reasonable person have understood by the exchange between the officer and the suspect?" Florida v. Jimeno, 500 U.S. 248, 251, 111 S. Ct. 1801, 1803-04, 114 L. Ed. 2d 297 (1991). "[T]he State has the burden of proving the necessary consent was obtained . . . ." Florida v. Royer, 460 U.S. 491, 497, 103 S. Ct. 1319, 1324, 75 L. Ed. 2d 229 (1983).

-

"Both the presence of consent to search and any related limitations are factual issues for the trial court to resolve after consideration of the attendant circumstances."  Bynum v. Commonwealth, 23 Va. App. 412, 418, 477 S.E.2d 750, 753 (1996). Nevertheless, we review de novo the trial court's application of the legal principles relating to consent searches to its factual findings on the issue of consent and any related limitations. Ornelas v. United States, 517 U.S. 690, 699, 116 S. Ct. 1657, 1659, 134 L. Ed. 2d 911 (1996).  We also may set aside factual findings if they are plainly wrong or without evidence to support them.  E.g., McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (en banc).

I agree that a suspect may further define the scope of a search by his "passive acquiescence" while the search is underway.  Grinton, 14 Va. App. at 451, 419 S.E.2d at 863. However, because the Commonwealth bears the burden of proving the necessary consent, see Royer, 460 U.S. at 497, 103 S. Ct. at 1324, "passive acquiescence," standing alone, is insufficient to broaden the scope of a search where the suspect's original consent unambiguously excluded a particular item or items.  As the majority acknowledges, the Fourth Amendment does not require explicit authorization to search a particular container if "[a suspect's original] consent would reasonably be understood to extend to [that] particular container."  Jimeno, 500 U.S. at

-

252, 111 S. Ct. at 1804.  As Professor Wayne R. LaFave has observed in the context of premises searches, "the boundaries of the place referred to mark the outer physical limits of the authorized search."  3 Wayne R. LaFave, Search and Seizure § 8.1(c), at 612 (3d ed. 1996).  I see no reason why this principle should not apply equally to searches of the person.

Here, appellant's express consent applied only to a search of "his person."  "The burden was upon the officer to obtain consent [covering the bag he wished to search], not on [appellant] to affirmatively deny consent."  Jean-Laurent, 34 Va. App. at 80, 538 S.E.2d at 319 (holding tacit consent to search of person was insufficient to prove consent to search bags, where bags were not in defendant's actual possession, defendant merely pointed out bags at officer's request, and officer never specifically asked for consent to search bags). The mere fact that the object of the officer's search was narcotics, that appellant was aware of this fact when he consented to the search, and that narcotics could have been hidden in the plastic bag appellant was carrying did not automatically expand the scope of appellant's consent when Officer Reardon expressly requested consent to search only appellant's "person" and appellant set the bag down before the search began.  Although the test for determining the scope of a suspect's consent is an objective one, Officer Reardon indicated

-

his subjective understanding that the scope of appellant's consent did not cover the bag of socks when he testified that his "search of [appellant's] person" yielded nothing incriminating and that he did not ask for consent to search the bag of socks.

The cases cited by the majority do not support the conclusion that appellant's consent to a search of his person necessarily included consent to a search of the bag of socks. As the majority concedes, this issue is one of first impression in Virginia, and even the cases from other jurisdictions upon which the majority relies involved construction "of the term 'person' in the context of [(1)] searching 'the person' pursuant to a warrant" for that person or (2) searching the belongings of a nonresident visitor pursuant to a warrant for the premises on which the person was found. See United States v. Graham, 638 F.2d 1111, 1114 (7th Cir. 1981) (holding that "a shoulder purse carried by a person at the time he is stopped lies within the scope of a warrant authorizing the search of his person"); see also United States v. Branch, 545 F.2d 177, 182-83 (D.C. Cir. 1976) (noting premises warrant did not validate search of shoulder bag in possession of person who arrived on premises after search had begun but that "such personal items as [a] shoulder bag" or "a wallet and paper bag, passed by one occupant of the residence to the other," "may, in some circumstances, be

-

found to be within the ambit of a premises search warrant");
United States v. Robertson, 833 F.2d 777, 778, 784 (9th Cir.
1987) (applying principle that containers closely associated
with one's person require warrant specifically authorizing their
search to invalidate search of backpack carried by defendant,
who was leaving house when officers arrived to execute arrest
warrant for a third party, where premises warrant police secured
after seizing defendant's backpack did not specifically
authorize search of defendant or her backpack); State v. Wynne,
552 N.W.2d 218, 220 (Minn. 1996) (relying on Graham to
invalidate search of purse taken from person arriving outside
residence for which police had premises warrant after search
already had commenced); State v. Andrews, 549 N.W.2d 210,
215-16, 218 (Wis. 1996) (relying in part on Graham to hold that
police executing premises warrant may not search items "worn by
or in the physical possession of persons whose search is not
authorized by the warrant" (footnote omitted)); Hayes v. State,
234 S.E.2d 360, 361-62 (Ga. Ct. App. 1977) (holding search of
suitcase found next to man sleeping on couch was
unconstitutional where officers had warrant for particular
apartment and its occupant and failed, prior to search, to take
reasonable steps to determine whether suitcase belonged to
occupant named in warrant or to nonresident visitor).

-

The Seventh Circuit Court of Appeals reasoned in <u>Graham</u>, relied upon by the majority, that excluding "[c]ontainers . . . appended to the body" from the scope of a warrant for the person "would be to narrow the scope of a search of one's person to a point at which it would have little meaning."  638 F.2d at 1114. The court in <u>Graham</u> specifically characterized the question at issue as whether "a shoulder purse carried by a person at the time he is stopped lies within the scope of a warrant authorizing the search of his person."  <u>Id.</u>  Accepting the court's holding in <u>Graham</u> as proper when applied to searches supported by warrants, I nevertheless would not apply such reasoning to consent searches.  As one jurist has observed,

> [A] shoulder bag or purse has been held to
> fall within a warrant for the search of a
> person in a case where the court refused to
> "narrow the scope" of the warrant and
> admitted all the evidence obtained.
> [<u>Graham</u>, 638 F.2d at 114].  <u>But that, under</u>
> <u>the perspective of upholding a search [made</u>
> <u>pursuant to a warrant], a bag is personal</u>
> <u>does not prevent it from being seen under</u>
> <u>another perspective as distinct from the</u>
> <u>person</u>.

<u>Robertson</u>, 833 F.2d at 788 (Noonan, C.J., dissenting) (emphasis added) (rejecting majority's conclusion equating search of backpack with search of "pocket on a pair of pants on a person" and arguing correct result would be to uphold admission of contents of backpack found on premises pursuant to search warrant for "formulas for making methamphetamine"); <u>cf.</u> <u>Graham</u>,

-

638 F.2d at 1114 (noting "defendant is mistaken in his contention that the rationale used to define the scope of a search incident to an arrest is equally applicable in defining the scope of a search of the person authorized by a warrant").

Virginia law expressly provides that, in the absence of a search warrant or probable cause coupled with exigent circumstances, see, e.g., Jefferson v. Commonwealth, 27 Va. App. 1, 16, 497 S.E.2d 474, 481 (1998), the Commonwealth bears the burden of proving a suspect has consented to the search conducted, and a court evaluating whether the search exceeded the scope of the consent must determine what "the typical reasonable person [would] have understood by the exchange between the officer and the suspect," Jimeno, 500 U.S. at 251, 111 S. Ct. at 1803-04. What a magistrate envisions when issuing a warrant for the search of a person, and, more importantly, what the Constitution permits under the language of that warrant, may be very different from what "the typical reasonable person [would] have understood" when consenting to a search of one's person. The majority cites not a single case dealing with the meaning of "person" within the context of a consent search. Because the Commonwealth bears the burden of proving consent, cases dealing with the construction of a warrant authorizing the search of a person or a particular premises simply are not persuasive.

-

Finally, the additional cases cited by the majority are distinguishable from appellant's case and do not support the conclusion that appellant's mere failure to object to Officer Reardon's picking up and searching the bag proved his original consent was intended to cover the bag. For example, in Grinton, the defendants consented to a search of "the contents and containers" of their vehicle without mention of the vehicle's trunk. 14 Va. App. at 850-51, 419 S.E.2d at 862-63. In Grinton, because the defendants failed to object as the search progressed and because the challenged area of the car could reasonably be construed to fall within the scope of the defendants' original consent, we held the challenged search valid. Id.; see McNair v. Commonwealth, 31 Va. App. 76, 82-85, 521 S.E.2d 303, 306-08 (1999) (en banc) (holding that where defendant contacted police to report robbery in progress, said robbers might still be in his residence, allowed officers to search his two-level residence, and did not object when an additional officer went upstairs to "search[] for clues," search of second level for clues was within scope of defendant's original consent); see also United States v. Rison, 946 F.2d 1497, 1500-01 (10th Cir. 1991) (holding that where defendant consented to search of "the glove box, the trunk and the remainder of his vehicle" and stood by without objecting when trooper searched beneath back seat of vehicle, "it [was]

-

reasonable to conclude that defendant's acquiescence indicated that the search was within the scope of the consent"); United States v. Espinosa, 782 F.2d 888, 892-93 (10th Cir. 1986) (holding that where defendant consented to search of his car and stood by as agent conducted a "thorough and systematic search" which included removal of vehicle's back seat and raising of car's rear quarter panel, defendant's failure to object to search indicated search was within scope of consent).

In appellant's case, by contrast, the bag could not reasonably be construed to fall within the scope of appellant's original consent. Assuming appellant could have given implied consent to a search of the bag, in addition to express consent to a search of his person, by handing the bag directly to Officer Reardon, see United States v. Rojas, 906 F. Supp. 120, 128 (E.D.N.Y. 1995), appellant did not do so. Instead, he set the bag on the bed prior to the search of his person. Under these facts, I would hold that appellant's consent to a search of his person, coupled with his mere failure to object to the search of the bag, was insufficient to meet the Commonwealth's burden of proving consent. Accordingly, I conclude the trial court erred in holding appellant's consent to the search supported its denial of the motion to suppress.

-

B.

PROBABLE CAUSE TO ARREST

The evidence also fails to support the second theory advanced by the Commonwealth, that the search of appellant was constitutional because Officer Reardon had probable cause to arrest appellant prior to conducting the search. See, e.g., Carter v. Commonwealth, 9 Va. App. 310, 312, 387 S.E.2d 505, 506 (1990).[2]

Where an anonymous informant provides a detailed, predictive tip and police officers are able to corroborate suspicious circumstances "ordinarily not easily predicted," the evidence, taken as a whole, may be sufficient to provide probable cause. See Illinois v. Gates, 462 U.S. 213, 242-46, 103 S. Ct. 2317, 2334-36, 76 L. Ed. 2d 527 (1983) (involving

___

[2] The Commonwealth made this argument in the trial court and on brief on appeal. The fact that the trial court concluded appellant consented to the search and, thus, did not reach the probable cause issue does not prevent us from considering that issue on appeal where no further factual findings are necessary. See Driscoll v. Commonwealth, 14 Va. App. 449, 451-52, 417 S.E.2d 312, 313 (1992) (holding that appellate court may affirm ruling where trial court reached right result for wrong reason, as long as alternate basis for affirmance was presented to trial court and no further factual findings are necessary); see also Hancock v. Commonwealth, 21 Va. App. 466, 469, 465 S.E.2d 138, 140 (1995) (where trial court applied erroneous intent standard in convicting accused for possession of firearm by convicted felon, considering, without discussing authority to do so, whether evidence was sufficient to prove requisite intent and reversing based on holding, as a matter of law, that it did not prove requisite intent).

-

probable cause for search warrant).  By contrast, when an officer receives an anonymous tip that a certain individual is selling drugs at a particular location and the officer confirms that a person matching that description is in the specified location with others but the officer observes no behavior which indicates drug distribution, the officer lacks probable cause for an arrest.  Carter, 9 Va. App. at 313, 387 S.E.2d at 507; see also Hardy v. Commonwealth, 11 Va. App. 433, 435-36, 399 S.E.2d 27, 29 (1990).

Applying these principles here, I would hold that Officer Reardon lacked probable cause to arrest appellant before he searched the bag of socks.  Although this case did not involve observations of people engaged in innocent behavior on a public street like in Hardy and Carter, the anonymous informant's tip nevertheless included mostly innocent details which likely were easily observable to anyone watching the specified motel room for a brief period of time.  Further, the tip was not truly predictive in that the informant said merely that a person named E. was supplying cocaine to the motel room but did not indicate when E. would arrive or leave the room.

Finally, the information Officer Reardon gained on his own in a search of the motel room with the occupant's consent was insufficient to provide probable cause under the totality-of-the-circumstances test.  Although Officer Reardon

-

testified that the presence of a "bunch of plastic baggies" in the room was consistent with narcotics use or distribution and that the presence of $250 cash in the Bible was "suspicious," nothing linked appellant to the plastic baggies or cash other than his subsequent arrival in the room.  Appellant was cooperative and engaged in no furtive or unusual behavior until Officer Reardon picked up the bag of socks.  Thus, the information known to Officer Reardon at the time he seized and searched the bag of socks was sufficient, at best, to provide him with reasonable suspicion for an investigative detention, not with probable cause to arrest.  See, e.g., Alabama v. White, 496 U.S. 325, 330-32, 110 S. Ct. 2412, 2416-17, 110 L. Ed. 2d 301 (1990).  Because the tip was not sufficiently predictive and Officer Reardon's independent investigation yielded only minimal corroborative evidence relating to appellant, Officer Reardon lacked probable cause to arrest appellant at the time he seized and searched the bag of socks.

For these reasons, I would hold the trial court erroneously denied the motion to suppress, and I would reverse and dismiss appellant's conviction.  Therefore, I respectfully dissent.