*832 ELDER, Judge,
dissenting.
I would hold, as a matter of law, that the search of Edwards (appellant) exceeded the scope of his consent to search. I also would hold that the search was not valid as incident to a lawful arrest because the officer lacked probable cause to believe appellant had committed a narcotics offense. Thus, I would hold the trial court’s denial of the motion to suppress was erroneous, and I would reverse and dismiss the challenged conviction.
A.
SCOPE OF CONSENT TO SEARCH
“A consensual search is reasonable if the search is within the scope of the consent given.” Grinton v. Commonwealth, 14 Va.App. 846, 850, 419 S.E.2d 860, 862 (1992). Consent may be express or implied. Jean-Laurent v. Commonwealth, 34 Va.App. 74, 79, 538 S.E.2d 316, 318 (2000). The scope of the consent is viewed under a standard of “ ‘objective’ reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?” Florida v. Jimeno, 500 U.S. 248, 251, 111 S.Ct. 1801, 1803-04, 114 L.Ed.2d 297 (1991). “[T]he State has the burden of proving the necessary consent was obtained .... ” Florida v. Royer, 460 U.S. 491, 497, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229 (1983).
“Both the presence of consent to search and any related limitations are factual issues for the trial court to resolve after consideration of the attendant circumstances.” Bynum v. Commonwealth, 23 Va.App. 412, 418, 477 S.E.2d 750, 753 (1996). Nevertheless, we review de novo the trial court’s application of the legal principles relating to consent searches to its factual findings on the issue of consent and any related limitations. Ornelas v. United States, 517 U.S. 690, 699, 116 S.Ct. 1657, 1659, 134 L.Ed.2d 911 (1996). We also may set aside factual findings if they are plainly wrong or without evidence to support them. E.g., McGee v. Commonwealth, 25 Va.App. 193, 198, 487 S.E.2d 259, 261 (1997) (en banc).
*833 I agree that a suspect may further define the scope of a search by his “passive acquiescence” while the search is underway. Grinton, 14 Va.App. at 851, 419 S.E.2d at 863. However, because the Commonwealth bears the burden of proving the necessary consent, see Royer, 460 U.S. at 497, 103 S.Ct. at 1324, “passive acquiescence,” standing alone, is insufficient to broaden the scope of a search where the suspect’s original consent unambiguously excluded a particular item or items. As the majority acknowledges, the Fourth Amendment does not require explicit authorization to search a particular container if “[a suspect’s original] consent would reasonably be understood to extend to [that] particular container.” Jimeno, 500 U.S. at 252, 111 S.Ct. at 1804. As Professor Wayne R. LaFave has observed in the context of premises searches, “the boundaries of the place referred to mark the outer physical limits of the authorized search.” 3 Wayne R. LaFave, Search and Seizure § 8.1(c), at 612 (3d ed.1996). I see no reason why this principle should not apply equally to searches of the person.
Here, appellant’s express consent applied only to a search of “his person.” “The burden was upon the officer to obtain consent [covering the bag he wished to search], not on [appellant] to affirmatively deny consent.” Jean-Laurent, 34 Va. App. at 80, 538 S.E.2d at 319 (holding tacit consent to search of person was insufficient to prove consent to search bags, where bags were not in defendant’s actual possession, defendant merely pointed out bags at officer’s request, and officer never specifically asked for consent to search bags). The mere fact that the object of the officer’s search was narcotics, that appellant was aware of this fact when he consented to the search, and that narcotics could have been hidden in the plastic bag appellant was carrying did not automatically expand the scope of appellant’s consent when Officer Reardon expressly requested consent to search only appellant’s “person” and appellant set the bag down before the search began. Although the test for determining the scope of a suspect’s consent is an objective one, Officer Reardon indicated his subjective understanding that the scope of appellant’s consent *834 did not cover the bag of socks when he testified that his “search of [appellant’s] person” yielded nothing incriminating and that he did not ask for consent to search the bag of socks.
The cases cited by the majority do not support the conclusion that appellant’s consent to a search of his person necessarily included consent to a search of the bag of socks. As the majority concedes, this issue is one of first impression in Virginia, and even the cases from other jurisdictions upon which the majority relies involved construction “of the term ‘person’ in the context of [ (1)] searching ‘the person’ pursuant to a warrant” for that person or (2) searching the belongings of a nonresident visitor pursuant to a warrant for the premises on which the person was found. See United States v. Graham, 638 F.2d 1111, 1114 (7th Cir.1981) (holding that “a shoulder purse carried by a person at the time he is stopped lies within the scope of a warrant authorizing the search of his person”); see also United States v. Branch, 545 F.2d 177, 182-83 (D.C.Cir.1976) (noting premises warrant did not validate search of shoulder bag in possession of person who arrived on premises after search had begun but that “such personal items as [a] shoulder bag” or “a wallet and paper bag, passed by one occupant of the residence to the other,” “may, in some circumstances, be found to be within the ambit of a premises search warrant”); United States v. Robertson, 833 F.2d 777, 778, 784 (9th Cir.1987) (applying principle that containers closely associated with one’s person require warrant specifically authorizing their search to invalidate search of backpack carried by defendant, who was leaving house when officers arrived to execute arrest warrant for a third party, where premises warrant police secured after seizing defendant’s backpack did not specifically authorize search of defendant or her backpack); State v. Wynne, 552 N.W.2d 218, 220 (Minn.1996) (relying on Graham to invalidate search of purse taken from person arriving outside residence for which police had premises warrant after search already had commenced); State v. Andrews, 201 Wis.2d 383, 549 N.W.2d 210, 215-16, 218 (1996) (relying in part on Graham to hold that police executing premises warrant may not search items “worn by or in the *835 physical possession of persons whose search is not authorized by the warrant” (footnote omitted)); Hayes v. State, 141 Ga.App. 706, 234 S.E.2d 360, 361-62 (1977) (holding search of suitcase found next to man sleeping on couch was unconstitutional where officers had warrant for particular apartment and its occupant and failed, prior to search, to take reasonable steps to determine whether suitcase belonged to occupant named in warrant or to nonresident visitor).
The Seventh Circuit Court of Appeals reasoned in Graham, relied upon by the majority, that excluding “[cjontainers ... appended to the body” from the scope of a warrant for the person “would be to narrow the scope of a search of one’s person to a point at which it would have little meaning.” 638 F.2d at 1114. The court in Graham specifically characterized the question at issue as whether “a shoulder purse carried by a person at the time he is stopped lies within the scope of a warrant authorizing the search of his person.” Id. Accepting the court’s holding in Graham as proper when applied to searches supported by warrants, I nevertheless would not apply such reasoning to consent searches. As one jurist has observed,
[A] shoulder bag or purse has been held to fall within a warrant for the search of a person in a case where the court refused to “narrow the scope” of the warrant and admitted all the evidence obtained. [Graham, 638 F.2d at 1114]. But that, under the perspective of upholding a search [made pursuant to a warrant], a bag is personal does not prevent it from being seen under another perspective as distinct from the person.
Robertson, 833 F.2d at 788 (Noonan, C.J., dissenting) (emphasis added) (rejecting majority’s conclusion equating search of backpack with search of “pocket on a pair of pants on a person” and arguing correct result would be to uphold admission of contents of backpack found on premises pursuant to search warrant for “formulas for making methamphetamine”); cf. Graham, 638 F.2d at 1114 (noting “defendant is mistaken in his contention that the rationale used to define the scope of *836 a search incident to an arrest is equally applicable in defining the scope of a search of the person authorized by a warrant”).
Virginia law expressly provides that, in the absence of a search warrant or probable cause coupled with exigent circumstances, see, e.g., Jefferson v. Commonwealth, 27 Va.App. 1, 16, 497 S.E.2d 474, 481 (1998), the Commonwealth bears the burden of proving a suspect has consented to the search conducted, and a court evaluating whether the search exceeded the scope of the consent must determine what “the typical reasonable person [would] have understood by the exchange between the officer and the suspect,” Jimeno, 500 U.S. at 251, 111 S.Ct. at 1803-04. What a magistrate envisions when issuing a warrant for the search of a person, and, more importantly, what the Constitution permits under the language of that warrant, may be very different from what “the typical reasonable person [would] have understood” when consenting to a search of one’s person. The majority cites not a single case dealing with the meaning of “person” within the context of a consent search. Because the Commonwealth bears the burden of proving consent, cases dealing with the construction of a warrant authorizing the search of a person or a particular premises simply are not persuasive.
Finally, the additional cases cited by the majority are distinguishable from appellant’s case and do not support the conclusion that appellant’s mere failure to object to Officer Reardon’s picking up and searching the bag proved his original consent was intended to cover the bag. For example, in Grinton, the defendants consented to a search of “the contents and containers” of their vehicle without mention of the vehicle’s trunk. 14 Va.App. at 850-51, 419 S.E.2d at 862-63. In Grinton, because the defendants failed to object as the search progressed and because the challenged area of the car could reasonably be construed to fall within the scope of the defendants’ original consent, we held the challenged search valid. Id.; see McNair v. Commonwealth, 31 Va.App. 76, 82-85, 521 S.E.2d 303, 306-08 (1999) (en banc) (holding that where defendant contacted police to report robbery in progress, said robbers might still be in his residence, allowed officers to *837 search his two-level residence, and did not object when an additional officer went upstairs to “search[] for clues,” search of second level for clues was within scope of defendant’s original consent); see also United States v. Rison, 946 F.2d 1497, 1500-01 (10th Cir.1991) (holding that where defendant consented to search of “the glove box, the trunk and the remainder of his vehicle” and stood by without objecting when trooper searched beneath back seat of vehicle, “it [was] reasonable to conclude that defendant’s acquiescence indicated that the search was within the scope of the consent”); United States v. Espinosa, 782 F.2d 888, 892-93 (10th Cir.1986) (holding that where defendant consented to search of his car and stood by as agent conducted a “thorough and systematic search” which included removal of vehicle’s back seat and raising of car’s rear quarter panel, defendant’s failure to object to search indicated search was within scope of consent).
In appellant’s case, by contrast, the bag could not reasonably be construed to fall within the scope of appellant’s original consent. Assuming appellant could have given implied consent to a search of the bag, in addition to express consent to a search of his person, by handing the bag directly to Officer Reardon, see United States v. Rojas, 906 F.Supp. 120, 128 (E.D.N.Y.1995), appellant did not do so. Instead, he set the bag on the bed prior to the search of his person. Under these facts, I would hold that appellant’s consent to a search of his person, coupled with his mere failure to object to the search of the bag, was insufficient to meet the Commonwealth’s burden of proving consent. Accordingly, I conclude the trial court erred in holding appellant’s consent to the search supported its denial of the motion to suppress.
B.
PROBABLE CAUSE TO ARREST
The evidence also fails to support the second theory advanced by the Commonwealth, that the search of appellant was constitutional because Officer Reardon had probable cause to arrest appellant prior to conducting the search. See, *838 e.g., Carter v. Commonwealth, 9 Va.App. 310, 312, 387 S.E.2d 505, 506 (1990).[2]
Where an anonymous informant provides a detailed, predictive tip and police officers are able to corroborate suspicious circumstances “ordinarily not easily predicted,” the evidence, taken as a whole, may be sufficient to provide probable cause. See Illinois v. Gates, 462 U.S. 213, 242-46, 103 S.Ct. 2317, 2334-36, 76 L.Ed.2d 527 (1983) (involving probable cause for search warrant). By contrast, when an officer receives an anonymous tip that a certain individual is selling drugs at a particular location and the officer confirms that a person matching that description is in the specified location with others but the officer observes no behavior which indicates drug distribution, the officer lacks probable cause for an arrest. Carter, 9 Va.App. at 313, 387 S.E.2d at 507; see also Hardy v. Commonwealth, 11 Va.App. 433, 435-36, 399 S.E.2d 27, 29 (1990).
Applying these principles here, I would hold that Officer Reardon lacked probable cause to arrest appellant before he searched the bag of socks. Although this case did not involve observations of people engaged in innocent behavior on a public street like in Hardy and Carter, the anonymous informant’s tip nevertheless included mostly innocent details which likely were easily observable to anyone watching the specified motel room for a brief period of time. Further, the tip was *839 not truly predictive in that the informant said merely that a person named E. was supplying cocaine to the motel room but did not indicate when E. would arrive or leave the room.
Finally, the information Officer Reardon gained on his own in a search of the motel room with the occupant’s consent was insufficient to provide probable cause under the totality-of-the-circumstances test. Although Officer Reardon testified that the presence of a “bunch of plastic baggies” in the room was consistent with narcotics use or distribution and that the presence of $250 cash in the Bible was “suspicious,” nothing linked appellant to the plastic baggies or cash other than his subsequent arrival in the room. Appellant was cooperative and engaged in no furtive or unusual behavior until Officer Reardon picked up the bag of socks. Thus, the information known to Officer Reardon at the time he seized and searched the bag of socks was sufficient, at best, to provide him with reasonable suspicion for an investigative detention, not with probable cause to arrest. See, e.g., Alabama v. White, 496 U.S. 325, 330-32, 110 S.Ct. 2412, 2416-17, 110 L.Ed.2d 301 (1990). Because the tip was not sufficiently predictive and Officer Reardon’s independent investigation yielded only minimal corroborative evidence relating to appellant, Officer Rear-don lacked probable cause to arrest appellant at the time he seized and searched the bag of socks.
For these reasons, I would hold the trial court erroneously denied the motion to suppress, and I would reverse and dismiss appellant’s conviction. Therefore, I respectfully dissent.

. The Commonwealth made this argument in the trial court and on brief on appeal. The fact that the trial court concluded appellant consented to the search and, thus, did not reach the probable cause issue does not prevent us from considering that issue on appeal where no further factual findings are necessary. See Driscoll v. Commonwealth, 14 Va.App. 449, 451-52, 417 S.E.2d 312, 313 (1992) (holding that appellate court may affirm ruling where trial court reached right result for wrong reason, as long as alternate basis for affirmance was presented to trial court and no further factual findings are necessary); see also Hancock v. Commonwealth, 21 Va.App. 466, 469, 465 S.E.2d 138, 140 (1995) (where trial court applied erroneous intent standard in convicting accused for possession of firearm by convicted felon, considering, without discussing authority to do so, whether evidence was sufficient to prove requisite intent and reversing based on holding, as a matter of law, that it did not prove requisite intent).