*847 Paul C. Wilson, Judge,
concurring.
I concur with the result reached in the principal opinion, and I agree' that Carra-well’s arrest was lawful. However, I write separately because the search of Carra-well’s bag was a lawful search incident to arrest.
A full recitation of the facts is necessary for a proper analysis in this case. Officer Burgdorf and three other police officers were present in a neighborhood in the City of St. Louis talking with residents when the officers first came in contact with Car-rawell. Upon exiting his car, Carrawell began yelling obscenities and making lewd gestures toward the officers. 'While continuing this outburst, Carrawell leaned back into his car and removed a white plastic grocery bag through the car window. Because the bag was opaque, Officer Burgdorf testified he could not see what was inside it but stated that he was concerned Carrawell was removing anything from his vehicle in such an agitated state.
Officer Burgdorf noticed that Carrawell was upsetting the residents on the street, so he crossed the street toward Carrawell and notified him that -he was under arrest for peace- disturbance. Even though Car-rawell was aware that he was under arrest, he walked away from Officer Burgdorf and moved toward the gated entrance to his apartment building.
Because the gate was locked, Carra-well’s daughter let him into the gated area from the inside. Officer Burgdorf followed Carrawell through the gate, but the gate closed before the other officers could enter and assist Officer Burgdorf with the arrest. After stepping through the gate, Officer Burgdorf again advised Carrawell that he was under arrest. Carrawell still refused to cooperate and continued to walk away. Officer Burgdorf then grabbed Carrawell by his arm. Carrawell resisted and pulled free from Officer Burgdorfs grasp. Acting alone, and separated from the other officers by a locked gate, Officer Burgdorf grabbed Carrawell again and struggled to move him toward the gate. Throughout this altercation, Carrawell maintained his grip on the bag.
Once Officer Burgdorf maneuvered Car-rawell toward the gate, the officers outside the gate were able to help restrain Carra-well by grabbing him through the openings in the' gate. The officers succeeded in handcuffing Carrawell’s left wrist through the gate but could not gain control over Carrawell’s right arm because he continued to clutch the bag in his right hand. Carrawell refused to drop the bag even though the officers ordered him several times to do so. When Carrawell failed to comply with the officers’requests, Officer Burgdorf pulled the bag from Carrawell’s hand and dropped it to the ground. As the bag hit the ground, the officers heard the sound of something breaking. No longer impeded by Carrawell’s grip on the bag, the officers placed Carrawell in handcuffs. Officer Burgdorf reached down to pick up the bag as. he began to move Carrawell back through the gate and toward the officers’ vehicles.
Despite .being handcuffed, Garrawell continued to struggle as he was moved to the police vehicle. When Officer Burgdorf got Carrawell to the . vehicle, Carrawell resisted being placed[1] info the vehicle. Needing both hands to control Carrawell, Office Burgdorf placed Carrawell’s bag on the trunk of the car and, with the help of the other officers, was able-to put Carra-well into the vehicle. Immediately after seating Carrawell in the vehicle,- Officer Burgdorf turned back to Carrawell’s grocery bag. Officer Burgdorf testified that he was concerned the -bag may contain a weapon because, of the way Carrawell had grabbed the bag from his car . and refused to let go of it despite being ordered to do *848 so several times. ■ Moreover, Officer Burg-dorf could not reasonably leave the bag on the ground at the scene of- the arrest for fear it contained a weapon or other dangerous material; Nor could he reasonably bring it into the patrol car without knowing what was in it and (given the breaking sound.when the bag was first dropped) what _ condition those contents were in. Looking inside the. bag, Officer Burgdorf found pieces of a broken ceramic plate and a smaller plastic bag containing a tan powder that Officer Burgdorf believed to be heroin.
The officers then transported Carrawell to the police station for booking. During the drive to the station, Carrawell continued to ■ direct profanities at the officers. Due to Carrawell’s agitated state, the officers testified that they did not want to make further contact with him until he-was safely confined' at the station,' Upon arriving at the police station, Carrawell continued to be uncooperative throughout the booking process. ‘
Analysis .
The “search incident to arrest” exception encompasses two distinct rationales and a failure to distinguish between them accounts for the erroneous conclusion in the principal opinion. First, “a search may be made of the person of the arrestee by virtue of the lawful ■ arrest.” United States v. Robinson* 414 U.S. 218, 224, 94 -S.Ct. 467, 38 L.Ed.2d' 427 (1973). The Supreme- Court cited “the long line of authorities ' of this Court dating back to Weeks [v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914) ]" and “the history' of practice in this country and in England” in concluding that a search of the arrestee’s person—including clothing and personal effects—requires “no additional justification” beyond the validity of the custodial arrest. Robinson, 414 U.S. at 235, 94 S.Ct. 467. The Court held that a search of the arrestee’s person is “not only an exception to the warrant,requirement of the Fourth Amendment, but is also a ‘reasonable’ search under that Amendment.” Id.
Second, the “search incident to arrest” exception allows a warrantless search “of the area within the control of the arres-tee.” Id. at 224, 94 -S.Ct. 467. Unlike the first application above, however, this second application requires additional justification which.the first application does not. In Chimel v: California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), the Supreme Court held that this application of the “search incident to arrest” exception must be justified by particularized concerns that the arrestee might otherwise access a weapon or destroy evidence. For some time, the Chimel requirement of additional justification was not enforced for searches within the interior of the arres-tee’s ear, see New York v. Belton, 453 U.S, 454, 469-61,101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), but the Supreme Court eventually overruled Belton and held that all searches of an arrestee’s surroundings-r-including the interior of a car—must be supported by some additional exigency or justification beyond the fact of the arrest. Arizona v, Gant, 556 U.S. 332, 335, 129 S.Ct. 1710, 173 L,Ed.2d 485 (2009).
But Gant and its zealous ratification of Chimel were limited only to the second application of the “search incident to arrest” exception, i.e., a search not of the arrestee’s person or effects but of items within the arrestee’s immediate reach or control. Nothing in Gant or Chimel purports to limit the first application of the “search incident to arrest” exception discussed in Robinson, i.e., a search of the arrestee’s person and effects. Unlike a search of the arrestee’s surroundings, the search of the arrestee’s person and effects *849 does not require the “case-by-case adjudication” required by Gant and Chimel. Robinson, 414 U.S. at 235, 94 S.Ct. 467. Instead, these searches are justified solely by the fact that the officers were making a lawful arrest. Id. at 232, 94 S.Ct. 467 (“The peace officer empowered to arrest must be empowered to disarm. If he may disarm, he may search, lest a weapon be concealed.”) (internal quotation marks omitted).
Accordingly, the question of whether a “search incident to arrest” must have the “case-by-case” justification required by Chimel—or whether no such justification is required under Robinson—turns on whether the item searched was an item of personal property immediately associated with the person of the arrestee. If so, then Robinson applies and no justification beyond the fact of a lawful arrest need be shown. See United States v. Chadwick, 433 U.S. 1, 15, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977) (requiring Chimel justification only for searches of “personal property not immediately associated with the person of the arrestee” (emphasis added)), overruled on other grounds by California v. Acevedo, 500 U.S. 565, 111 S.Ct. 1982,-114 L.Ed.2d 619 (1991).
Prior to this case, courts have drawn a bright line between these two, related, but very different, applications of the “search incident to arrest” exception. This line, often referred to as 'the “time of arrest” rule, provides that an item is “immediately associated” with the arrestee’s person such that it can be searched under Robinson without further justification under Chimel if the arrestee has actual possession of the item at the time of a lawful arrest. See United States v. Oakley, 153 F.3d 696, 697-98 (8th Cir.1998) (backpack); United States v. Tavolacci, 895 F.2d 1423,1428-29 (D.C.Cir,1990) (luggage); Carter v. State, 367 Md. 447, 788 A.2d 646, 655 (Md.2002) (lunch bag); State v. Ellis, 355 S.W.3d 522, .524-25 (Mo.App.2011) (backpack); People v. Brawn, 36 AD.3d 931, 828 N.Y.S.2d 550, 551 (2007) (backpack); People v. Boff, 766 P.2d 646, 651-52 (Colo.1988) (backpack). See generally Andrea G. Nadel, Annotation, Lawfulness of Warrantless Search of Purse or Wallet of Person Arrested or Suspected of Crime, 29 A.L.R.4th § 3[a], at 780 (1984 & 2012 Supp.) (collecting cases). '
In other words, under Robinson, officers lawfully may search anything that an ar-restee actually is holding or wearing at the time .of the arrest. But, if the officers extend this search to items in the arres-tee’s constructive possession, i,e., within the arrestee’s reach or control, the “case-by-case” justification of Chimel, must be met.
The United States Court of Appeals for the Seventh Circuit provided the rationale for the bright-line “time of arrest” test in determining whether a search incident to arrest was a search of the arrestee’s person and effects under Robinson or a search of the arrestee’s surroundings under Chimel: “The human anatomy does not naturally cbntain external ' pockets, pouches, or other places in which personal objects can be conveniently carried.” United States v. Graham,. 638 F.2d 1111, 1114 (7th Cir.1981).[1] Accordingly, when *850 police seize an arrestee, they necessarily also seize the arrestee’s clothing and personal effects in the arrestee’s actual possession, all of which may contain a weapon or evidence. Id. See also United States v. Edwards; 415 U.S. 800, 806, 94 S.Ct. 1284, 39 L.Ed.2d 771 (1974) (observing that “the police had lawful custody of [the suspect] and necessarily of the clothing he wore”). The time of arrest rule recognizes that the same exigencies that justify searching an arrestee’s person under Robinson also justify searching the arrestee’s clothes and other items in the arrestee’s actual possession. This rule not only adheres to the distinctions drawn by the Supreme Court in Robinson and Chimel, it is the sort of simple and clear direction this Court should provide whenever possible.
Applying the “time of arrest” rule, the grocery bag was' in Carrawell’s actual possession at the time of his lawful arrest. Like a backpack on his shoulder or a pants pocket, this bag was “immediately associated with the person of the arrestee” and, therefore, subject to search incident to his arrest without any further justification under Chimel. Chadwick, 433 U.S. at 15, 97 S.Ct. 2476. Even if further justification were required, which it is not, it is.present in this case. After Carrawell initiated his confrontation with the‘police, he reached back into his vehicle to retrieve the grocery bag. While Officer Burgdorf, who was separated from the other officers by a locked gate, was struggling with Carra-well, Carrawell was ordered several times to drop the bag. He refused.
There- was no material delay between the time Carrawell was secured and the time Officer Burgdorf looked inside the bag. In fact, .the officers were unable to handcuff Carrawell until Officer Burgdorf wrested the bag from Carráwell’s hand. Under Robinson, Officer Burgdorf surely would have been able to look into the bag as he took it from Carrawell’s hand. Such a search would have been lawful but unreasonably dangerous because, even though, Carrawell was cuffed, Officer Burgdorf and Carrawell were separated from the other officers by a locked gate. Officer Burgdorf managed to get both Car-rawell and the bag' through the gate and over to one of the police vehicles but again had to set the bag aside to gain enough control over Carrawell to get him safely into the back of: the police vehicle. Immediately thereafter, Officer Burgdorf looked into the bag because it would have been unreasonable to. leave it behind and unsafe to bring it into the police vehicle without knowing the nature and condition of the contents.
Carrawell argues that the search of the bag was unlawful because, at the time of the search, he was handcuffed in the patrol car, and the bag was in the exclusive control of the officers.' Carraweli’s understanding of the scope of a search incident to arrest is mistaken:
*851 [T]o construe the term “exclusive control” as meaning it attaches immediately upon the seizure of an object located on the person or within the immediate vicinity of the arrestee, is a construction incapable of application consistent with fundamental principles, of constitutional law. Under such a construction, for example, the warrantless search of an arrestee resulting in the seizure of a wallet, purse, or shoulder bag would prohibit an immediate search of the contents of that type of container, and this is plainly contrary to the law governing searches incident to arrest.
United States v. Garcia, 6Ó5 F.2d 349, 355 (7th Cir.1979).
Carrawell’s construction of exclusive control would swallow completely Robinson’s exception to the warrant requirement. Instead, exclusive control “must be construed in the context of its.application in Chadwick.” Id. In Chadwick, the Supreme Court found that the footlocker was within the exclusive control of officers because the search was conducted at the police station more than an hour after seizure of the footlocker and long after the defendants were securely in custody. 433 U.S. at 15, 97 S.Ct. 2476. Since Chadwick, lower courts have found the exclusive control analysis does not apply to cases in which the item searched was “immediately associated” with thé arrestee at the time of the arrest. ‘See Garcia, 605 ' F.2d 349 (finding it lawful to search two hand-carried suitcases immediately upon arrest); see also Graham, 638 F.2d at 1114 (noting that a search of a shoulder purse was within the scope of a search incident to arrest).[2]
Further, to construe “exclusive control” to mean that it attaches the instant an arrestee loses physical contact with the item imposes a warrant requirement unless the search is absolutely contemporaneous with the seizure and both are absolutely contemporaneous with the arrest. Courts have rejected this argument because it is neither workable nor compelled by Robinson, Chadwick or Chimel. A post -Edwards case decided on remarkably similar facts, United States v. Fleming, 677 F.2d 602, 605 (7th Cir.1982), upholds a warrantless search of a paper bag the arrestee had in his hand when the arrest was initiated. As with the present case, the arrest in Fleming involved a scuffle and the bag was removed from the defendant’s hand while the officer was attempting to make the arrest. Id. The officer did not search the contents of the bag until the defendant was moved to the street and handcuffed. Id. Noting that the case was not governed by Chadwick, the Fleming court holds that the warrantless search of the bag was lawful because it was incident to the arrest:
[I]t does not make sense to prescribe a constitutional test that is entirely at odds with safe and sensible police procedures ..., unless we intend to use the Fourth Amendment to impose on police a requirement that the search be absolutely contemporaneoüs with the arrest, no matter what the peril to themselves or to bystanders. It is surely possible for a Chimel search to be undertaken too long after the arrest and too far *852 from the arrestee’s person. That-'is the lesson of Chadwick_ [A] five-minute • delay between seizing [defendant’s] bag and opening it, occasioned by [officer’s] handcuffing [defendant] and moving with him to the street, [did not] de-fease[ ] [officer’s] right to search under Chimel principles.
Id. at 607-08.[3]
In this case, Carrawell argues that exclusive control over the bag attached once he was put into the patrol car. As discussed in Garcia, this is “plainly contrary to the law governing searches incident to arrest.” 638 F.2d at 1114. Had Carrawell left the grocery bag in his car, Chimel would have required additional justification to search it even if it was within his reach or control at the time of this arrest. .But he did not. He grabbed the bag and lield onto it throughout the ensuing confrontation and struggle. The grocery bag was as much a part of Carrawell’s body* and effects as if Carrawell had jammed it into a jacket pocket and Officer Burgdorf had .pulled it loose and thrown it to the ground while subduing him. In either case, the search is lawful under Robinson because the. .bag was in Carrawell’s actual possession at the time of the arrest. Nothing more is required. The Supreme Cpurt of Washington summarized this law with admirable clarity:
Gant di4 not enact special constitutional protections for belongings inside cars; it restored the same protections, all searches of an arrestee’s surroundings enjoy under Chimel. Gant, 556 U.S. at 343, 129 S.Ct. 1710 (citing Belton, 453 U.S. at 460, 101 S.Ct. 2860). These protections are no broader than Chi-mel and do not include the arrestee’s person or her personal articles, even if the arrestee is in a car at the time of arrest. Police may not evade Gant by removing an article from a car before searching it, but this is not because the federal and state constitutions specially protect articles in cars. It is because, under Chimel, the State must justify the warrantless search of every article not on the arrestee’s person or closely associated with the arrestee’s person at the tipie of his or her arrest. The distinction does not turn on whether, a person is arrested in a car, on the street, or at home, but on the relationship of the article to the arrestee. See Robinson, 414 U.S. at 220, 94 S.Ct. 467 (search of the person or vehicle occupants); Chi-mel, 395 U.S. at 753-54, 89 S.Ct. 2034 (search of arrestee’s home).
State v. Byrd, 178 Wash.2d 611, 310 P.3d 793, 799-800 (2013) (emphasis added).
The principal opinion rejects the bright-line “time of arrest” rule and. all the cases applying it because it -concludes these cases are contrary to Edwards.. This is a misapplication of Edwards, which, if anything, reinforces the holding of Robinson that a search incident, .to arrest may be made of the arrestee and those effects in the arrestee’s actual possession at the time of the arrest without .the need for any further justification under Chimel.[4]
*853 If, as the principal opinion suggests, Edwards requires the police to obtain a warrant to search a wallet or any other item taken from an arrestee’s person during the course of a lawful search,.then Edwards must have overruled Robinson (albeit sub silentio) because the search of the cigarette package in Robinson would have been unlawful under such a rationale. Yet, in the 41 years since Edwards was decided, such a dramatic redrawing of the landscape of searches incident to lawful arrests has gone unnoticed and unenforced.
Even the Supreme Court’s most recent relevant decision does not ascribe such a sea change effect to Edwards. Instead, in Riley v. California, — U.S. —, 134 S.Ct. 2473, 189 L.Ed.2d 430 (2014), the Court reaffirmed its holding in Robinson that a lawful arrest—by itself—establishes the authority to search the person and effects of an arrestee even when there are no particularized Chimel concerns present at the time of the search. Id. (citing Robinson, 414 U.S. at 236, 94 S.Ct. 467). “In doing so, the Court did not draw a line between a search of [the] person and a further examination of the cigarette pack found during that search.” Id. at 2484 (emphasis added).
Once an officer gained control of the pack, it was unlikely that Robinson could have accessed the pack’s contents. But unknown physical objects may always pose risks, no matter .how slight, during the tense atmosphere of a custodial arrest. The officer ... testified that he could not identify the objects in the cigarette pack..:. Given that, a further search was a reasonable protective measure.
Id. at 2485 (Emphasis added and internal citations omitted).
If Edwards requires officers to obtain a warrant to search all items removed from the person of the arrestee during an arrest, as the principal opinion suggests it does, then- the Court’s discussion in Riley of Robinson—and its careful efforts in Riley to create a cell-phone-sized exception to Robinson—would have been unnecessary,. Instead, the Court noted that, because such technology was “nearly inconceivable ... when Chimel and Robinson were decided,” it was required to re-weigh the arrestee’s and the government’s interests and—solely due to the unique properties of cell phones—to rule on the side of individual privacy where that is the item taken from the arrestee. . Id. But,, in doing so, the Court specifically noted—and approved—that. Robinson generally struck this balance in favor of allowing a warrant-less search of -the arrestee’s person and effects with no particularized showing of need: “On the government interest side, Robinson concluded that the two risks identified in Chimel [i.e., officer safety and preservation of evidence] ... are present in all custodial arrests.” Id. at 2484-85 (emphasis added). As á result, Riley reaffirmed the Robinson-Chimel distinction, but created a singular exception to Robinson for cellphones seized from the person of the arrestee during a lawful arrest; an *854 exception which would not have been necessary (or even logical) if Reynolds had the reach and breadth the principal opinion ascribes to it in this case.
Here, Officer’s Burgdorfs search of Carrawell’s bag occurred mere seconds— not hours—after Carrawell was confined in the back of the police vehicle, and long before Carrawell was safely detained at the police station. ■ Even if Edwa/rds does not permit an hours-long delay between the seizure and the search of an item that was taken from the arrestee’s actual possession at the time of the arrest, nothing in Edwards suggests that the momentary delay between when Officer Burgdorf wrested the bag from Carrawell’s grip and when Officer Burgdorf looked into the bag to see what Carrawell had been holding onto so doggedly rendered that search unconstitutional. This was one continuous and potentially dangerous course of action initiated by Carrawell, and the momentary delay between taking the bag from Carra-well and looking into that bag was more than justified by Officer Burgdorfs more pressing obligations of protecting the bystanders, protecting himself and the other officers, and subduing Carrawell.
Conclusion
Because the bag was in Carrawell’s immediate possession and seized at the time of the arrest, the search was a lawful search incident to arrest under Robinson. On this basis, I would affirm the circuit court’s judgment.

. The principal opinion states that Graham did not hold a purse is part of the person for purposes of a search incident to arrest because the Graham' court’s decision involved the scope of a search authorized by a warrant and recognized that the purse was not part of the person with respect to a search incident to arrest. However, thát is not an accurate representation of Graham. In Graham, the defendant was wearing a purse on his shoulder when he was approached by police officers with a’ warrant to search his person. 638 F.2d at 1112. One of the officers removed the purse from the defendant and
*850 searched the bag. Id. The.defendant argued that the search of the bag was unlawful because once the bag “was- removed from his person,” it was "held within the exclusive control of the police.” Id. The defendant contended that the law governing searches incident to arrest applied, so the warrant authorized only the search of his person, not his purse. Id. at 1113. The court addressed the defendant’s mistaken understanding of the legitimate scope of a search incident to arrest:
[E]ven if defendant was correct in his contention that the law governing searches incident to arrest applied, the search of his shoulder purse was clearly within the scope of such a search, and the seizure of the [evidence] would therefore not have been improper.
Id. at 1114 (emphasis added).

. The Graham court discussed an Illinois case, which the principal opinion mentions to indicate Graham cannot be relied on. However, as the Eighth Circuit stated: “We are not troubled by the Graham court's tacitly accepting and distinguishing an Illinois case that rejected a station-house search allegedly undertaken incident to an arrest. The Illinois case does not take into account the 1981 decision in New York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768. The Illinois courts are currently ruling as we do here.” Curd v. City Court of Judsonia, Arkansas, 141 F,3d 839, 843 n. 11 (8th Cir. 1998).

. The Eighth Circuit stated that when an item is seized from the arrestee’s person in the course of a lawful arrest, it does not matter whether the arrestee was capable of reaching the item at the time of the search. Curd, 141 F.3d at 842 n.9; see also 3 W. LaFave, Search and Seizure, § 5.3(a) át 193 (5th ed. 2012) ("The 'notion seems to be that Robinson recognized that anything on the person was "fair game” for a search, and that the opportunity of the police to search should not be more limited merely because there- may have been reasons making a full search there impractical or because the police opted for the less . humiliating alternative of a search in the privacy of,the stationhouse.’.’) (footnotes omitted).

. Far from supporting the unprecedented approach taken by the principal opinion, Edwards actually holds that thé police’s authority to seize and search items within the ar-restee’s “immediate possession” is measured at the time of arrest, it does not need to be exercised at that' moment. Edwards, 415 U.S. at 807, 94 S.Ct. 1234. Effects in the arrestee’s “immediate possession” at the time of arrest may be searched after the ar-restee is safely confined. Id. at 801-802, 94 S.Ct. 1234 (search of the arrestee’s clothes was lawful even though search occurred approximately. 10- hours after arrestee was in custody).