STATE of Missouri, Respondent,

v.

Lillie Mae RATTLER, Appellant.

No. 44311.

Missouri Court of Appeals,
Eastern District,
Division Three.

Aug. 31, 1982.

Joseph W. Downey, Public Defender, Richard Burke, Asst. Public Defender, St. Louis, for appellant.

John Ashcroft, Atty. Gen., Kristie Green, Asst. Atty. Gen., Jefferson City, George A. Peach, Circuit Atty., St. Louis, for respondent.

CRIST, Judge.

Defendant appeals from her conviction by a jury of murder in the second degree, § 565.004, RSMo. 1978, for which she was sentenced to serve ten years with the Department of Corrections. The first of her two points on appeal assigns error to the trial court's denying her motion to suppress evidence found during an "inventory search" of her purse at the police station following her arrest. The second assignment of error is the trial court's denial of her motion for new trial which alleged newly-discovered evidence constituting a defense based on mental disease or defect. Section 552.030, RSMo.Supp.1980. We affirm.

The victim and defendant, described as the victim's "lady friend," had come to St.

Louis to visit the victim's son and daughter-in-law (the Castillejas'). They were staying in the living room of the Castillejas' four-room apartment. During the morning of the day of the murder in August, 1981, victim and defendant were in the living room drinking a fifth of wine and a quart of "pink champale." Early that afternoon, Ms. Castilleja who was in an adjoining room heard the victim call out for his son. She went to the living room doorway and saw the victim lying down on the couch, kicking his legs at defendant while defendant slashed at him with a knife. Ms. Castilleja ran for her husband, and both hurried back to the living room to see defendant rush out screaming she had just stabbed a man, and to see the victim struggling to rise from the couch, bleeding from his head and neck. An autopsy later revealed eight knife wounds on the victim's body, one of which cut his left internal jugular vein and caused his death.

Defendant had returned to the apartment by the time the police arrived, and was standing off to one side of the living room, acting hysterically, holding the knife in her right hand and clutching a beaded purse in her left. After the officers coaxed her into dropping the knife, defendant set the purse on a nearby fireplace mantel. One officer opened the purse to look for weapons, and finding none returned the purse to the mantel. Later, the officers took the purse with them when they transported defendant to the police station. The purse's contents were inventoried at the police station, and the officers discovered what appeared to be a check with the victim's name on it. One officer recalled the victim's son saying that defendant and victim had been quarreling that day over a "money-matter," and seized the purported check. It turned out the "check" was an Illinois food stamp receipt, and it was accepted as evidence in the state's case-in-chief.

■ Defendant claims the food stamp receipt should have been suppressed as the product of a warrantless search and seizure proscribed by the Fourth Amendment. The contention is untenable.

"The prevailing rule under the Fourth Amendment that searches and seizures may not be made without a warrant is subject to various exceptions. One of them permits warrantless searches incident to custodial arrests [authorities omitted] and has traditionally been justified by the reasonableness of searching for weapons, instruments of escape, and evidence of crime when a person is taken into official custody and lawfully detained."

*United States v. Edwards,* 415 U.S. 800, 802–03, 94 S.Ct. 1234, 1236–37, 39 L.Ed.2d 771 (1974). The reasonableness of warrantless searches of an arrestee's person incident to his or her custodial arrest extends to the initial warrantless seizure and search of the defendant's purse, as it was a personal effect intimately associated with her person and in her immediate possession at the time of her arrest. See: *Stewart v. State,* 611 S.W.2d 434, 438 (Tex.Cr.App.1981); *United States v. Venizelos,* 495 F.Supp. 1277, 1281–82 (S.D.N.Y.1980). With regard to the subsequent taking of defendant's purse from the mantel and the "search" thereof at the police station (assuming there was a "search" in the constitutional sense, see: *State v. Quinn,* 565 S.W.2d 665, 671–72 (Mo.App.1978)), the Supreme Court in *United States v. Edwards,* 415 U.S. at 803, 94 S.Ct. at 1237, continues: "It is also plain that searches and seizures that could be made on the spot at the time of arrest may legally be conducted later when the accused arrives at the place of detention." Because the "search" through the purse at the police station would have been lawful at the scene of arrest, the fact the purse was transported to the police station and "searched" there is of no constitutional significance. The trial court did not err by admitting the food stamp receipt into evidence.

The newly-discovered evidence urged in the second point on appeal is a psychiatrist's finding made during defendant's court-ordered presentence investigation that she suffers from Schizo-Affective Psychosis, which produces episodes of bizarre behavior

and delusional thinking. The psychiatrist testified the psychosis is cognizable as a mental disease or defect under Ch. 552, RSMo.Supp.1980, and defendant's counsel argues the trial's outcome might have been different had he known of the psychosis and raised it in the defense.

Granting a new trial on the basis of newly-discovered evidence is not favored in the law, and trial courts have broad discretion in ruling on the matter. *State v. Shaw,* 569 S.W.2d 375, 378 (Mo.App.1978). The movant must show:

> "(1) that the new evidence came to his knowledge after the trial, (2) that his failure to discover such evidence prior to trial was not owing to a lack of due diligence on his part, (3) that the evidence is so material that it would probably produce a different result in a new trial, and (4) that the evidence is not merely cumulative or intended to impeach the testimony of [a] witness."

*Id.* at 378.

Defendant's evidence failed to satisfy requirement (3). The manifestations of defendant's disorders are episodic, and there was no evidence she was going through such an episode at the time of the offense. The trial court noted defendant's testimony at trial shows a quite lucid and accurate recollection of the events surrounding the crime. The psychiatrist testified that, at least between episodes and perhaps even during them, defendant appreciates the difference between right and wrong, and is able both to understand the proceedings against her and assist counsel. We do not find on this record an abuse of the trial court's discretion in ruling on the motion for new trial.

AFFIRMED.

REINHARD, P. J., and SNYDER, J., concur.