

# SUPREME COURT OF MISSOURI
## en banc

STATE OF MISSOURI,       )
           )
         Respondent,       )
           )
v.                       )       No. SC94927
           )
DERRICK L. CARRAWELL,       )
           )
         Appellant.        )

### APPEAL FROM THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
### The Honorable Steven Russell Ohmer, Judge

### *Opinion issued January 12, 2016*

Derrick Carrawell appeals his conviction of the class C felony of possession of a controlled substance. § 195.202.[1] A police officer searched a plastic grocery bag that Carrawell was holding after he was already handcuffed and seated in the police car and discovered heroin. Carrawell argues the circuit court erred and abused its discretion in overruling his motion to suppress evidence of the heroin because: (1) the State failed to show police had probable cause to arrest him for a peace disturbance, making the arrest unlawful, and (2) even if the arrest was lawful, the subsequent search of his plastic bag was unlawful. The circuit court's judgment is affirmed.

---

[1] Statutory citations are to RSMo Supp. 2013.

**Factual and Procedural History**

In April 2012, four City of St. Louis police officers went to investigate complaints of increased gang activity in a particular neighborhood. While the officers were speaking with several neighborhood residents outside an apartment building, Officer Curtis Burgdorf noticed a vehicle pull up nearby with the driver (Carrawell) staring at the officers for about 30 seconds before finally parking across the street. Carrawell then stepped out of the vehicle and, while staring at Officer Burgdorf, grabbed his crotch, spit in the officers' direction, and said, "What the fuck are you looking at, bitch?" Carrawell then went around to the passenger-side door of the vehicle, removed a white plastic grocery bag, and continued to utter vulgarities towards the officers.

Noticing that Carrawell's language was bothering the group of neighborhood residents (which included a young girl), Officer Burgdorf approached Carrawell and notified him he was under arrest for peace disturbance. Carrawell, with plastic bag in hand, continued to walk away from the officer. Officer Burgdorf followed and, as Carrawell attempted to open an apartment door, grabbed ahold of Carrawell. A struggle ensued as Officer Burgdorf attempted to handcuff Carrawell and repeatedly asked him to drop the plastic bag. Eventually, Officer Burgdorf was able to rip the plastic bag from Carrawell's hands and it fell to the ground, producing a "breaking" sound. Officer Burgdorf then completed the handcuffing process, picked up the bag, and escorted Carrawell to the police car. Another struggle ensued while attempting to place Carrawell in the police car, at which point Officer Burgdorf set the plastic bag on top of the car's trunk. After securing Carrawell in the police car, Officer Burgdorf—for the first time—

looked into the plastic bag.[2] Inside he discovered a broken ceramic plate and a smaller plastic bag containing a tan powder that Officer Burgdorf believed to be, and which was later confirmed to be, heroin.

Carrawell was charged with the class C felony of drug possession. Prior to trial, he filed a motion to suppress evidence of the heroin arguing that neither the arrest nor search of his plastic bag was lawful. The circuit court held a hearing on the motion and subsequently overruled it. The circuit court also overruled Carrawell's continuing objection, based on the reasons set forth in the motion to suppress, during trial. Carrawell was convicted and sentenced to 12 years' imprisonment. He then filed a motion for a new trial, which the circuit court also overruled. Carrawell now appeals, contesting the circuit court's ruling on his motion to suppress.

## Standard of Review

"At a hearing on a motion to suppress, the state bears both the burden of producing evidence and the risk of nonpersuasion to show by a preponderance of the evidence that the motion to suppress should be overruled." *State v. Grayson*, 336 S.W.3d 138, 142 (Mo. banc 2011) (internal quotations omitted). "When reviewing the trial court's overruling of a motion to suppress, this Court considers the evidence presented at both

---

[2] In its discussion of the facts, the concurring opinion asserts that Officer Burgdorf could not "reasonably bring [the bag] into the patrol car without knowing what was in it and (given the breaking sound when the bag was first dropped) what condition those contents were in." The record does not support this conclusion. At trial, Officer Burgdorf testified that he "overheard a breaking sound" when the bag fell to the ground. He further testified, "With his reluctance to let go of it or show me what was in there, I was concerned there may have been a weapon in there." There was no suggestion by Officer Burgdorf that he had any reason to believe the contents of the bag would have harmed the occupants of the patrol car while remaining in the bag.

3

the suppression hearing and at trial to determine whether sufficient evidence exists in the record to support the trial court's ruling." *State v. Pike*, 162 S.W.3d 464, 472 (Mo. banc 2005). "The Court defers to the trial court's determination of credibility and factual findings, inquiring only whether the decision is supported by substantial evidence, and it will be reversed only if clearly erroneous." *State v. Goff*, 129 S.W.3d 857, 862 (Mo. banc 2004) (internal quotations omitted). "By contrast, legal determinations of reasonable suspicion and probable cause are reviewed *de novo*." *Grayson*, 336 S.W.3d at 142.

**Analysis**

Carrawell argues evidence of the heroin in his possession should have been suppressed because his arrest and the search of his plastic bag were unlawful under the Fourth Amendment to the United States Constitution and article I, section 15 of the Missouri Constitution, both of which protect against unreasonable searches and seizures.[3] "When evidence is obtained in violation of the Fourth Amendment, the judicially developed exclusionary rule usually precludes its use in a criminal proceeding against the victim of the illegal search and seizure." *Illinois v. Krull*, 480 U.S. 340, 347 (1987). Carrawell asserts Officer Burgdorf did not have probable cause to arrest him for peace disturbance because Carrawell did not do anything calculated to provoke a "breach of the peace." He also asserts that the State failed to offer into evidence the city's peace disturbance ordinance under which Officer Burgdorf claimed to have arrested Carrawell.

---

[3] This Court interprets the Fourth Amendment of the United States Constitution and article I, section 15 of the Missouri Constitution to provide "the same guarantees against unreasonable search and seizures; thus, the same analysis applies to cases under the Missouri Constitution as under the United States Constitution." *State v. Oliver*, 293 S.W.3d 437, 442 (Mo. banc 2009).

4

He argues that, because a court cannot simply take judicial notice of a municipal ordinance, there was no definition of "peace disturbance" before the circuit court by which it could determine whether there was probable cause to arrest him for the crime. Carrawell also argues that, even if the arrest was lawful, the search of his plastic bag was unlawful because Carrawell had not abandoned the plastic bag and the search did not qualify as a search incident to arrest. He further asserts that the search could not be justified under the inventory-search exception because the State failed to produce evidence that the police department had standardized criteria or established routine for opening closed containers in an inventory search.

## Carrawell's Arrest Was Lawful

"An arrest with or without a warrant requires probable cause, which simply means a knowledge of facts and circumstances sufficient for a prudent person to believe the suspect is committing or has committed [an] offense." *State v. Heitman*, 589 S.W.2d 249, 253 (Mo. banc 1979). Although Carrawell focuses on Officer Burgdorf's testimony that he arrested Carrawell for violating the city's peace disturbance ordinance, this Court need not determine whether there was probable cause to arrest Carrawell for peace disturbance. This is because there was certainly probable cause to arrest Carrawell for resisting arrest. *See* § 575.150.1(1) (stating that a person commits the crime of resisting arrest when the person knows or reasonably should know that a police officer is attempting to arrest the person and the person resists the arrest "by using or threatening the use of violence or physical force or by fleeing from such officer").

5

Here, there was testimony that when Officer Burgdorf told Carrawell he was under arrest, Carrawell kept walking away, and that when Officer Burgdorf caught up to Carrawell, Carrawell continued to try to pull away from the officer's grasp. Notably, it is no defense to resisting arrest "that the law enforcement officer was acting unlawfully in making the arrest." Section 575.150.4. In determining whether Carrawell committed the crime of resisting arrest, therefore, there is no need to determine whether Officer Burgdorf could have lawfully arrested Carrawell for peace disturbance under the facts presented. For such purpose, it only matters that Carrawell indeed resisted an arrest, lawful or not. Because the evidence presented shows there was probable cause to conclude Carrawell resisted arrest, an arrest of Carrawell was lawful.[4]

**The Search of Carrawell's Bag Was Not a Lawful Search Incident to Arrest, But the Exclusionary Rule Does Not Apply**

Because Carrawell's arrest was lawful, the next question is whether the search of his plastic bag was lawful. Warrantless searches are *per se* unreasonable under the Fourth Amendment, unless an "established and well-delineated" exception applies. *Katz v. United States*, 389 U.S. 347, 357 (1967). One such exception is a search incident to a lawful arrest. *United States v. Robinson*, 414 U.S. 218, 224 (1973). Incident to arrest,

---

[4] This conclusion does not depend on which crime—peace disturbance or resisting arrest—Officer Burgdorf subjectively intended to arrest Carrawell. An officer's "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004). That is, "the fact the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action." *Id.* Although Officer Burgdorf may have intended to arrest Carrawell for peace disturbance, the circumstances that then arose, viewed objectively, justified an arrest based on Carrawell committing the crime of resisting arrest.

6

officers may lawfully search "**the arrestee's person and the area 'within his immediate control'**—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence." *Chimel v. California*, 395 U.S. 752, 763 (1969) (emphasis added). Here, although there was a lawful arrest, Officer Burgdorf's first search of Carrawell's plastic bag occurred outside the police car, after Carrawell had already been handcuffed and placed into the back of the police car. Thus, the plastic bag was not within Carrawell's immediate control at the time of Officer Burgdorf's search. However, the court of appeals has previously indicated that an arrestee's personal effects (e.g., a purse or backpack) may be searched even when they are not within the immediate control of the arrestee because such a search qualifies as a search of the person—i.e., the personal effects are part of the person. *See*, *e.g., State v. Ellis*, 355 S.W.3d 522, 524 (Mo. App. 2011); *State v. Rattler*, 639 S.W.2d 277, 278 (Mo. App. 1982). This reasoning is based on a misunderstanding of law and should no longer be followed.

In *United States v. Chadwick*, the Supreme Court of the United States made clear the reasoning for the search-incident-to-arrest exception:

> The reasons justifying search in a custodial arrest are quite different. When a custodial arrest is made, there is always some danger that the person arrested may seek to use a weapon, or that evidence may be concealed or destroyed. To safeguard himself and others, and to prevent the loss of evidence, it has been held reasonable for the arresting officer to conduct a prompt, warrantless search of the arrestee's person and the area within his immediate control. . . .

433 U.S. 1, 14 (1977) (internal quotations omitted). The Supreme Court then announced the general rule:

7

> Once law enforcement officers have reduced luggage or other personal property not immediately associated with the person of the arrestee to their exclusive control, and there is no longer any danger that the arrestee might gain access to the property to seize a weapon or destroy evidence, a search of that property is no longer an incident of the arrest.

*Id.* at 15. This principle was reaffirmed by the Supreme Court in *Arizona v. Gant*: "If there is no possibility that an arrestee could reach into the area that law enforcement officers seek to search, both justifications for the search-incident-to-arrest exception are absent and the rule does not apply." 556 U.S. 332, 339 (2009). In *Gant*, the Supreme Court held that police may lawfully search a vehicle incident to arrest in two situations: (1) "if the arrestee is within reaching distance of the passenger compartment at the time of the search" or (2) "it is reasonable to believe the vehicle contains evidence of the offense of arrest." *Id.* at 351. Although *Gant* involved the search of a vehicle, the Supreme Court's holding is only unique to vehicles for the second category of situations. The first category is just a reiteration of *Chimel* and *Chadwick*—that general rule applies to *all* searches incident to arrest, vehicle or not.[5] That is, if the item searched is not within the arrestee's reaching distance (or "immediate control") at the time of the search, the justifications for a search incident to arrest are absent and there is no valid search incident to arrest.[6]

---

[5] Like the search of Carrawell's plastic bag, the unlawful search in *Gant* took place after the arrestee was handcuffed and placed in the back of a police car. 556 U.S. at 336.

[6] Despite what some cases may suggest, *Chadwick* was not abrogated by the Supreme Court's decision in *California v. Acevedo*, 500 U.S. 565 (1991). *Chadwick* held that police need a warrant to search a container, *unless an exception applies*, like search incident to arrest—the exception addressed in *Chadwick*. 433 U.S. at 15. *Acevedo*, in response to courts' confusion concerning containers found within vehicles searched under the automobile exception, essentially added an exception that may apply to a container, holding that "police may search an

8

A major source of the court of appeals' misunderstanding regarding this well-established rule appears to be based on language taken out of context from *United States v. Edwards*, in which the Supreme Court stated, "It is also plain that searches and seizures that could be made on the spot at the time of arrest may legally be conducted later when the accused arrives at the place of detention." 415 U.S. 800, 803 (1974). This broad statement that the court of appeals has relied upon was only dicta. The holding of *Edwards* was much narrower: the clothes that this particular arrestee was wearing at the time of arrest could be searched the next day at the station house because the police could

---

automobile and the containers within it where they have probable cause to believe contraband or evidence is contained." 500 U.S. at 580. *Acevedo* did not touch upon *Chadwick*'s analysis of searches incident to arrest, but only expanded the automobile exception to include probable cause analysis for containers found therein. *See Acevedo*, 500 U.S. at 579 ("We conclude that it is better to adopt one clear-cut rule **to govern automobile searches** and eliminate the warrant requirement for closed containers . . . .") (emphasis added). Therefore, the two holdings co-exist. A container may be searched in the vehicle context applying the *Acevedo* rule, or, if within an arrestee's immediate control, the *Chadwick* rule. A container in the non-vehicle context may be searched applying the *Chadwick* rule.

Similarly, some cases suggested *Chimel*, the basis for *Chadwick*'s rule, was abrogated by the Supreme Court's decision in *New York v. Belton*, 453 U.S. 454 (1981). *See Davis v. United States*, 131 S.Ct. 2419, 2424 (2011) ("Numerous courts read the [*Belton*] decision to authorize automobile searches incident to arrests of recent occupants, regardless of whether the arrestee in any particular case was within reaching distance of the vehicle at the time of the search."). The Supreme Court dispelled this notion in *Gant*:

> To read *Belton* as authorizing a vehicle search incident to every recent occupant's arrest would thus untether the rule from the justifications underlying the *Chimel* exception—a result clearly incompatible with our statement in *Belton* that it "in no way alters the fundamental principles established in the *Chimel* case regarding the basic scope of searches incident to lawful custodial arrests."

556 U.S. at 343.

9

not conduct the search contemporaneous with the arrest as the arrestee was wearing the clothes and the police did not have a change of clothes for him. *Id.* at 805. This was sound logic because "the person" of the arrestee in *Edwards* could not be separated from the arrestee's clothes at the time of the arrest, and the justification of preventing destruction of evidence (paint chips embedded in the clothes) remained the next day. In light of *Chimel*, *Chadwick*, and *Gant*, though, the Supreme Court's decision in *Edwards* should not be read to authorize the search of all personal effects incident to arrest regardless of whether the item searched is still within the immediate control of the arrestee at the time of the search. *See United States v. Monclavo-Cruz*, 662 F.2d 1285, 1289–90 (9th Cir. 1981) ("[T]his broad statement in *Edwards*, in contrast to its holding, has been circumscribed by *Chadwick* . . . [i]n light of these principles, we confine the *Edwards* exception to the person and clothing of an arrestee.").

Therefore, the *Edwards* exception to the general rule requiring the item searched to be within the arrestee's immediate control applies only to items that are so intertwined with the arrestee's person that they cannot be separated from the person at the time of arrest. The language in *Chadwick*—"or other personal property not immediately associated with the person"—appears to merely be a nod to this rare *Edwards* exception where the personal property searched is not separable from the person. *See Chadwick*, 433 U.S. at 15 (holding that luggage that was not within arrestee's immediate control could not be searched incident to arrest). Unlike the clothing in *Edwards*, the plastic bag in this case was easily separable from the arrestee's person. Indeed, the Supreme Court of the United States has made no distinction between the luggage in *Chadwick* that could

10

not be searched and other personal effects removed from a person, such as purses or shopping bags. Rather, the Supreme Court has lumped all of these items in the same category of "containers" that may be within an arrestee's immediate control, and therefore subject to a search incident to arrest. *See New York v. Belton*, 453 U.S. 454, 460 n.4 (1981) (noting that "containers" that may be within an arrestee's reach include "luggage, boxes, bags, clothing, and the like"); *see also State v. Perry*, 499 S.W.2d 473, 475 (Mo. 1973) ("[T]he officers had probable cause to make an arrest and in connection therewith to conduct a search of the person of appellant and **the area within her immediate control (the purse)**.") (emphasis added). It is not that these items may be searched because they are part of the person; rather, they may be searched because they are within the arrestee's immediate control. When that fact is no longer true, they may not be searched incident to arrest because the justifications for conducting such a search no longer persist. *Gant*, 556 U.S. at 339; *Chadwick*, 433 U.S. at 15. The court of appeals' distinction for purses and other similar personal effects is not consistent with Supreme Court precedent.

The origin of this purse exception in the court of appeals appears to be *State v. Woods*, 637 S.W.2d 113 (Mo. App. 1982). In *Woods*, the court of appeals held that a woman's purse could be searched after she had already been taken to the police station because the purse "was not so clearly distant from her at the police station as to make it impossible for her to gain access to it." *Id.* at 116. The court of appeals then went on to state, "We further note that a woman's purse is, like the arrestee's clothes in *Edwards*, more immediately associated with the person of the accused than is other personal

11

property, such as luggage or an attache case." *Id.* For support, the court of appeals cited *United States v. Berry*, which stated, "[U]nlike a purse that might be characterized as 'immediately associated with the person of the arrestee' because it is carried with the person at all times, the attache case here was more like luggage . . . ." 560 F.2d 861, 864 (7th Cir. 1977), *vacated by United States v. Berry*, 571 F.2d 2 (7th Cir. 1978). Not only was the purse conclusion dicta, but the *Berry* court failed to compare a purse with the clothing in *Edwards* in terms of their differing qualities of separability from the person— the very quality that made the clothing in *Edwards* "immediately associated with the person." The *Berry* opinion was also later vacated. *United States v. Berry*, 571 F.2d 2 (7th Cir. 1978).

The court of appeals has also relied on *United States v. Graham*, 638 F.2d 1111 (7th Cir. 1981), in support of its purse exception. *See Ellis*, 355 S.W.3d at 525. The concurring opinion relies on *Graham* as well, but the *Graham* court held that "a shoulder purse carried by a person at the time he is stopped lies within the scope of a **warrant** authorizing the search of his person." 638 F.2d at 1114 (emphasis added). It is important to note that the *Graham* court did not hold a purse is part of the person for purposes of a search incident to arrest. In fact, it did the opposite and distinguished a search incident to arrest from a search pursuant to a warrant, noting that "defendant is also mistaken in his contention that the rationale used to define the scope of a search incident to an arrest is equally applicable in defining the scope of a search of the person authorized by a warrant." *Id.* The *Graham* court then discussed an Illinois case that held "once the defendant was handcuffed and seated in the police squad car, and his purse was in the

12

possession of the police, the reasons justifying a search incident to his arrest no longer existed with respect to the purse." *Id.* Thus, any reliance on *Graham* by the concurring opinion or court of appeals to say a purse is part of the person for a search incident to arrest misconstrues that case. If anything, *Graham* recognized the purse was *not* part of the person with respect to a search incident to arrest.[7]

The concurring opinion also suggests that under *U.S. v. Robinson*, 414 U.S. 218 (1973), there is a "time of arrest" rule, meaning any personal effect in the arrestee's actual possession at the time of the arrest may be searched, regardless of whether the item is within the arrestee's immediate control at the time of the search, because a search of the arrestee's person (including personal effects) requires "'no additional justification' beyond the validity of the custodial arrest." This is not *Robinson*'s holding. The concurring opinion seizes on *Robinson*'s "no additional justification" language, but fails to provide context. In *Robinson*, the Supreme Court held:

> A police officer's determination as to how and where to search the person of a suspect whom he has arrested is necessarily a quick ad hoc judgment which the Fourth Amendment does not require to be broken down in each instance into an analysis of each step in the search. The authority to search the person incident to a lawful custodial arrest, **while based upon the need to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the**

---

[7] While the *Graham* court stated that the search of the purse in that particular case would have also fallen within the scope of a search incident to arrest, the court made this determination—not because the purse was part of the person—but because it rejected the argument that the purse was within the "exclusive control" of the police when police searched the purse in the presence of an unsecured arrestee. 638 F.2d at 1112–1114. In determining such, the *Graham* court cited *United States v. Garcia*, 605 F.2d 349 (7th Cir. 1979). *Graham*, 638 F.2d at 1113–114. The concurring opinion also curiously cites *Garcia* for support, although the search in *Garcia* occurred while the luggage was "within one foot" of an arrestee who was not handcuffed and, therefore, "the luggage continued to remain within her immediate reach." 605 F.2d at 352, 356.

13

**suspect.** A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification.

*Id.* at 235 (emphasis added). What the Supreme Court meant by "no additional justification" was that police officers need no prerequisite objective level of suspicion (e.g., probable cause) regarding the search itself—i.e., the officers need no reason to believe a person has, or an item contains, weapons or evidence in order to ensure their safety and the preservation of evidence in the flurry that is a custodial arrest. *Id.* Such objective level of suspicion would be an unnecessary "additional justification" to the two built-in justifications, officer safety and preventing destruction of evidence, that are already present in a search incident to arrest. *Id.*

Notably, the concurring opinion recognizes that these two justifications underlie a search incident to arrest, even one it would call a search under the "time of arrest" rule:

Accordingly, when police seize an arrestee, they necessarily also seize the arrestee's clothing and personal effects in the arrestee's actual possession, **all of which may contain a weapon or evidence**. . . . The time of arrest rule recognizes that **the same exigencies** that justify searching an arrestee's person under *Robinson* also justify searching the arrestee's clothes and other items in the arrestee's actual possession.

(emphasis added). These "same exigencies," however, cannot support a "time of arrest" rule. The two exigencies, or justifications, hinge on the spatial location of an item to an arrestee *at the time of the search*, not at the time of arrest. That is, even if the item to be searched was within the arrestee's immediate control (or "on the person") at the time of arrest, police need not be concerned with the arrestee inflicting harm with a weapon or destroying evidence when the hypothetical weapon or evidence is contained in an item no

14

longer within the arrestee's immediate control *at the time of the search*. The fact that the item was once within the arrestee's immediate control at the time of arrest has no impact on whether the justifications, or "exigencies," still persist at the time of the search.

The Supreme Court's clarification of *Belton*'s holding in *Gant* should have dispelled any notion of a "time of arrest" rule:

> [*Belton*] has been widely understood to allow a vehicle search incident to the arrest of a recent occupant even if there is no possibility the arrestee could gain access to the vehicle at the time of the search. This reading may be attributable to Justice Brennan's dissent in *Belton*, in which he characterized the Court's holding as resting on the "fiction . . . that the interior of a car is *always* within the immediate control of an arrestee who has recently been in the car." Under the majority's approach, he argued, "the result would presumably be the same even if [the officer] had handcuffed Belton and his companions in the patrol car" before conducting the search.

> Since we decided *Belton*, Courts of Appeals have given different answers to the question whether a vehicle must be within an arrestee's reach to justify a vehicle search incident to arrest, but Justice Brennan's reading of the Court's opinion has predominated. As Justice O'Connor observed, "lower court decisions seem now to treat the ability to search a vehicle incident to the arrest of a recent occupant as a police entitlement rather than as an exception justified by the twin rationales of *Chimel*." . . . Indeed, some courts have upheld searches under *Belton* "even when . . . the handcuffed arrestee had already left the scene."

> Under this broad reading of *Belton*, a vehicle search would be authorized incident to every arrest of a recent occupant notwithstanding that in most cases the vehicle's passenger compartment will not be within the arrestee's reach at the time of the search. To read *Belton* as authorizing a vehicle search incident to every recent occupant's arrest would thus untether the rule from the justifications underlying the *Chimel* exception—a result clearly incompatible with our statement in *Belton* that it "in no way alters the fundamental principles established in the *Chimel* case regarding the basic scope of searches incident to lawful custodial arrests." Accordingly, we reject this reading of *Belton* and hold that the *Chimel* rationale authorizes police to search a vehicle incident to a recent occupant's arrest

15

only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search.

*Gant*, 556 U.S. at 341–43 (internal citations omitted). Like the passenger compartment of an arrestee's vehicle, an arrestee's personal effects may no longer be within the arrestee's immediate control at the time of the search, negating the *Chimel* rationales for a search incident to arrest. The *Chimel* rationales are the only rationales for the search-incident-to-arrest exception. *See, e.g., Riley v. California*, 134 S.Ct. 2473, 2484 (2014) ("*Gant*, like *Robinson*, recognized that the *Chimel* concerns for officer safety and evidence preservation underlie the search incident to arrest exception."). Contrary to the concurring opinion's assertion, there simply is no separate rationale added by *Robinson*, which recognized that allowing searches incident to arrest is grounded solely in the need to protect officer safety and prevent destruction of evidence. *See id.*; 414 U.S. at 234–35. As such, there is no Supreme Court authority for the concurring opinion's "time of arrest" rule. This "time of arrest" rule is just as misguided as the flawed readings of *Belton* that the Supreme Court rejected—it "untether[s] the [search incident to arrest] rule from the justifications underlying the *Chimel* exception" and treats the ability to search an arrestee's personal effects "as a police entitlement rather than as an exception justified by the twin rationales of *Chimel*."[8]  *See Gant*, 556 U.S. at 342–43 (internal quotations omitted).

---

[8]  The influence of the now-rejected broad reading of *Belton* on the concurring opinion's "time of arrest" rule is especially evident in the concurring opinion's reliance on *United States v. Fleming*, 677 F.2d 602 (7th Cir. 1982), and *Curd v. City Court of Judsonia, Ark.*, 141 F.3d 839 (8th Cir. 1998). Although the *Fleming* court upheld the search of a bag after the arrestee had been handcuffed and removed from the immediate vicinity, it did so by analogizing the search to the

16

While there is no need for a "case-by-case adjudication" in every search incident to arrest concerning whether an officer had reason to believe an arrestee's personal effect contained a weapon or evidence, there certainly is a need for a case-by-case adjudication when the underlying justifications for searching that personal effect no longer persist because the item was no longer within the arrestee's immediate control. This principle was recently illuminated particularly well by the Supreme Court's discussion in *Riley* concerning whether officers could search a cell phone that was seized and not within the arrestee's immediate control:

> The United States and California both suggest that a search of cell phone data might help ensure officer safety in more indirect ways, for example by alerting officers that confederates of the arrestee are headed to the scene. . . . **The proposed consideration would also represent a broadening of *Chimel*'s concern that an *arrestee himself* might grab a weapon and use it against an officer to "resist arrest or effect his escape."** And any such threats from outside the arrest scene do not "lurk[] in all custodial arrests." Accordingly, the interest in protecting officer safety does not justify dispensing with the warrant requirement across the board. To the extent dangers to arresting officers may be implicated in a particular way in a particular case, **they are better addressed through consideration of case-specific exceptions** to the warrant requirement, such as the one for exigent circumstances. . . . **And once law enforcement officers have secured a cell phone, there is no longer any risk that the arrestee himself will be able to delete incriminating data from the phone.** . . . To the extent that law enforcement still has specific concerns about the potential loss of evidence in a particular case . . . . they may be able to rely on exigent circumstances to search the phone immediately.

---

misinterpreted holding of *Belton*. *See Fleming*, 677 F.2d at 605, 607 (noting that "when the occupant of an automobile is arrested, the entire passenger compartment of the car constitutes his 'grabbing area' and can be searched as an incident of the arrest," and rejecting the argument that the arrestee "had no realistic chance to grab anything and therefore the need for a Chimel search no longer existed"). In *Curd*, the Eighth Circuit upheld the search of a purse after the arrestee had already been taken to a detention center, citing to *Belton* for the proposition that "[i]t matters not whether Curd was capable of reaching the purse at the time of the search." *Curd*, 141 F.3d at 841, 842 n.9.

17

134 S.Ct. at 2485–87 (internal citations omitted) (emphasis added). Likewise, with any other personal effect, officers may not conduct a search incident to arrest when the arrestee himself cannot obtain a weapon or evidence from the personal effect; rather, any search of that personal effect must be grounded in another exception to the warrant requirement, such as an inventory search or exigent circumstances. *See id.*

Relevant to exigent circumstances, the concurring opinion also appears to conflate the search-incident-to-arrest exception with the exigent-circumstances exception, implicitly suggesting that Officer Burgdorf's search was justified because Officer Burgdorf testified that he was concerned the bag may have contained a weapon and "Officer Burgdorf looked into the bag because it would have been unreasonable to leave it behind and unsafe to bring it into the police vehicle without knowing the nature and condition of the contents." While the concurring opinion does not suggest the surrounding circumstances actually amounted to probable cause to believe the bag contained a weapon, concerns about the bag's contents go toward the officer's objective level of suspicion. As discussed above, level of suspicion, e.g., probable cause, plays no role in a search incident to arrest. *Robinson*, 414 U.S. at 235. It does, however, factor into the exigent-circumstances exception. *See, e.g., Florida v. Royer*, 460 U.S. 491, 497 (1983) ("[I]t is unquestioned that without a warrant to search Royer's luggage and **in the absence of probable cause and exigent circumstances**, the validity of the search depended on Royer's purported consent.") (emphasis added); *Chambers v. Maroney*, 399 U.S. 42, 51 (1970) ("Only in exigent circumstances will the judgment of the police as to

18

probable cause serve as a sufficient authorization for a search."). The state does not argue, and the record does not support the conclusion, that a warrantless search of Carrawell's bag was justified by exigent circumstances supported by probable cause.

Here, Carrawell was handcuffed and locked in the back of a police car at the time Officer Burgdorf searched the plastic bag. It matters not whether this bag was more akin to luggage or more akin to a purse. Neither is part of the person. It matters only whether the bag was within Carrawell's immediate control. Because it was not, there was not a valid search incident to arrest. *E.g., United States v. Matthews*, 532 Fed. Appx. 211, 218 (3d Cir. 2013); *United States v. Maddox*, 614 F.3d 1046, 1049 (9th Cir. 2010); *People v. Redmond*, 390 N.E.2d 1364, 1374 (Ill. App. 1979). The state has not demonstrated any other exception to the warrant requirement applies.[9]

---

[9] An exception for inevitable discovery via an inventory search—i.e, the police would have inevitably discovered the heroin through a lawful inventory search at the police station—does not apply here. Under the inevitable discovery doctrine,

> [I]llegally seized evidence may be admitted if the State proves by a preponderance of the evidence: (1) that certain standard, proper and predictable procedures of the local police department would have been utilized, and (2) those procedures inevitably would have led to discovery of the challenged evidence through the State's pursuit of a substantial, alternative line of investigation at the time of the constitutional violation. The inevitable discovery analysis cannot involve speculation and must focus on demonstrated historical facts capable of ready verification or impeachment.

*State v. Rutter*, 93 S.W.3d 714, 726 (Mo. banc 2002) (internal citations omitted). Although there was testimony that the police department here routinely conducts inventory searches, there was no indication that the police department had a standard procedure of always taking arrestees (or those arrested for peace disturbance or resisting arrest) to the police station, where they would be subject to an inventory search. Thus, to apply the inevitable discovery doctrine here would impermissibly involve speculation, as there is no evidence Carrawell would have been subjected to an inventory search absent the discovery of heroin.

19

That the search here was unlawful is not dispositive, however. "[W]hen an officer conducts a search incident to arrest in 'objectively reasonable reliance' on binding appellate precedent that is later overturned, the exclusionary rule does not suppress the evidence obtained as a result of that search." *State v. Johnson*, 354 S.W.3d 627, 630 (Mo. banc 2011). "[T]he exclusionary rule is triggered only when police practices are 'deliberate enough to yield meaningful deterrence, and culpable enough to be worth the price paid by the justice system.'" *Id.* at 633 (quoting *Davis v. United States*, 131 S.Ct. 2419, 2428 (2011)). "[O]fficers act in good faith when they objectively rely on binding directives from the judiciary and the legislature even though these directives may be later overturned." *Id.* at 634. At the time of Officer Burgdorf's search, there was court of appeals precedent authorizing officers to search an arrestee's personal effects as a search incident to arrest, even if such items were not within the arrestee's immediate control. *See*, *e.g., Ellis*, 355 S.W.3d at 524–25. Although such searches should no longer be deemed lawful, the exclusionary rule will not apply to this case. Accordingly, the circuit court did not err or abuse its discretion in overruling Carrawell's motion to suppress evidence of the heroin discovered in Carrawell's plastic bag.

## Conclusion

The warrantless arrest of Carrawell was lawful because there was probable cause to conclude Carrawell committed the crime of resisting arrest. The warrantless search of Carrawell's plastic bag was not a lawful search incident to arrest because the plastic bag was not within Carrawell's immediate control at the time of the search. However,

20

because there was court of appeals authority for conducting such a search, the exclusionary rule does not apply to this case. The judgment is affirmed.

_____
Zel M. Fischer, Judge

Stith, and Draper, JJ., concur;
Wilson, J., concurs in separate opinion filed;
Breckenridge, C.J., and Russell, J., concur in opinion of Wilson, J.;
Teitelman, J., concurs in part and dissents in part in separate opinion filed.



# SUPREME COURT OF MISSOURI
## en banc

STATE OF MISSOURI,                           )
                                             )
        Respondent,                      )
                                             )
v.                                           )    No. SC94927
                                             )
DERRICK L. CARRAWELL,                        )
                                             )
        Appellant.                       )

## CONCURRING OPINION

I concur with the result reached in the principal opinion, and I agree that Carrawell's arrest was lawful. However, I write separately because the search of Carrawell's bag was a lawful search incident to arrest.

A full recitation of the facts is necessary for a proper analysis in this case. Officer Burgdorf and three other police officers were present in a neighborhood in the City of St. Louis talking with residents when the officers first came in contact with Carrawell. Upon exiting his car, Carrawell began yelling obscenities and making lewd gestures toward the officers. While continuing this outburst, Carrawell leaned back into his car and removed a white plastic grocery bag through the car window. Because the bag was opaque, Officer Burgdorf testified he could not see what was inside it but stated that he was concerned Carrawell was removing anything from his vehicle in such an agitated state.

Officer Burgdorf noticed that Carrawell was upsetting the residents on the street, so he crossed the street toward Carrawell and notified him that he was under arrest for peace disturbance. Even though Carrawell was aware that he was under arrest, he walked away from Officer Burgdorf and moved toward the gated entrance to his apartment building.

Because the gate was locked, Carrawell's daughter let him into the gated area from the inside. Officer Burgdorf followed Carrawell through the gate, but the gate closed before the other officers could enter and assist Officer Burgdorf with the arrest. After stepping through the gate, Officer Burgdorf again advised Carrawell that he was under arrest. Carrawell still refused to cooperate and continued to walk away. Officer Burgdorf then grabbed Carrawell by his arm. Carrawell resisted and pulled free from Officer Burgdorf's grasp. Acting alone, and separated from the other officers by a locked gate, Officer Burgdorf grabbed Carrawell again and struggled to move him toward the gate. Throughout this altercation, Carrawell maintained his grip on the bag.

Once Officer Burgdorf maneuvered Carrawell toward the gate, the officers outside the gate were able to help restrain Carrawell by grabbing him through the openings in the gate. The officers succeeded in handcuffing Carrawell's left wrist through the gate but could not gain control over Carrawell's right arm because he continued to clutch the bag in his right hand. Carrawell refused to drop the bag even though the officers ordered him several times to do so. When Carrawell failed to comply with the officers' requests, Officer Burgdorf pulled the bag from Carrawell's hand and dropped it to the ground. As the bag hit the ground, the officers heard the sound of something breaking. No longer

2

impeded by Carrawell's grip on the bag, the officers placed Carrawell in handcuffs. Officer Burgdorf reached down to pick up the bag as he began to move Carrawell back through the gate and toward the officers' vehicles.

Despite being handcuffed, Carrawell continued to struggle as he was moved to the police vehicle. When Officer Burgdorf got Carrawell to the vehicle, Carrawell resisted being placed into the vehicle. Needing both hands to control Carrawell, Office Burgdorf placed Carrawell's bag on the trunk of the car and, with the help of the other officers, was able to put Carrawell into the vehicle. Immediately after seating Carrawell in the vehicle, Officer Burgdorf turned back to Carrawell's grocery bag. Officer Burgdorf testified that he was concerned the bag may contain a weapon because of the way Carrawell had grabbed the bag from his car and refused to let go of it despite being ordered to do so several times. Moreover, Officer Burgdorf could not reasonably leave the bag on the ground at the scene of the arrest for fear it contained a weapon or other dangerous material. Nor could he reasonably bring it into the patrol car without knowing what was in it and (given the breaking sound when the bag was first dropped) what condition those contents were in. Looking inside the bag, Officer Burgdorf found pieces of a broken ceramic plate and a smaller plastic bag containing a tan powder that Officer Burgdorf believed to be heroin.

The officers then transported Carrawell to the police station for booking. During the drive to the station, Carrawell continued to direct profanities at the officers. Due to Carrawell's agitated state, the officers testified that they did not want to make further

3

contact with him until he was safely confined at the station. Upon arriving at the police station, Carrawell continued to be uncooperative throughout the booking process.

**Analysis**

The "search incident to arrest" exception encompasses two distinct rationales and a failure to distinguish between them accounts for the erroneous conclusion in the principal opinion. First, "a search may be made of the ***person*** of the arrestee by virtue of the lawful arrest." *United States v. Robinson,* 414 U.S. 218, 224 (1973). The Supreme Court cited "the long line of authorities of this Court dating back to *Weeks* [*v. United States,* 232 U.S. 383 (1914)]" and "the history of practice in this country and in England" in concluding that a search of the arrestee's person – including clothing and personal effects – requires "no additional justification" beyond the validity of the custodial arrest. *Robinson*, 414 U.S. at 235. The Court held that a search of the arrestee's person is "not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment." *Id.*

Second, the "search incident to arrest" exception allows a warrantless search "of the area within the control of the arrestee." *Id.* at 224. Unlike the first application above, however, this second application requires additional justification which the first application does not. In *Chimel v. California,* 395 U.S. 752, (1969), the Supreme Court held that this application of the "search incident to arrest" exception must be justified by particularized concerns that the arrestee might otherwise access a weapon or destroy evidence. For some time, the *Chimel* requirement of additional justification was not enforced for searches within the interior of the arrestee's car, *see New York v. Belton,* 453

4

U.S. 454, 459–61 (1981), but the Supreme Court eventually overruled *Belton* and held that all searches of an arrestee's surroundings – including the interior of a car – must be supported by some additional exigency or justification beyond the fact of the arrest. *Arizona v. Gant,* 556 U.S. 332, 335 (2009).

But *Gant* and its zealous ratification of *Chimel* were limited only to the second application of the "search incident to arrest" exception, i.e., a search not of the arrestee's person or effects but of items within the arrestee's immediate reach or control. Nothing in *Gant* or *Chimel* purports to limit the first application of the "search incident to arrest" exception discussed in *Robinson*, i.e., a search of the arrestee's person and effects. Unlike a search of the arrestee's surroundings, the search of the arrestee's person and effects does not require the "case-by-case adjudication" required by *Gant* and *Chimel*. *Robinson*, 414 U.S. at 235. Instead, these searches are justified solely by the fact that the officers were making a lawful arrest. *Id.* at 232 ("The peace officer empowered to arrest must be empowered to disarm. If he may disarm, he may search, lest a weapon be concealed.") (internal quotation marks omitted).

Accordingly, the question of whether a "search incident to arrest" must have the "case-by-case" justification required by *Chimel* – or whether no such justification is required under *Robinson* – turns on whether the item searched was an item of personal property immediately associated with the person of the arrestee. If so, then *Robinson* applies and no justification beyond the fact of a lawful arrest need be shown. *See United States v. Chadwick,* 433 U.S. 1, 15 (1977) (requiring *Chimel* justification only for searches of "personal property ***not immediately associated with the person of the***

5

***arrestee***" (emphasis added)), *overruled on other grounds by California v. Acevedo,* 500 U.S. 565 (1991).

Prior to this case, courts have drawn a bright line between these two related, but very different, applications of the "search incident to arrest" exception. This line, often referred to as the "time of arrest" rule, provides that an item is "immediately associated" with the arrestee's person such that it can be searched under *Robinson* without further justification under *Chimel* if the arrestee has ***actual possession*** of the item at the time of a lawful arrest. *See United States v. Oakley,* 153 F.3d 696, 697–98 (8th Cir.1998) (backpack); *United States v. Tavolacci,* 895 F.2d 1423, 1428–29 (D.C. Cir.1990) (luggage); *Carter v. State,* 788 A.2d 646, 655 (Md. 2002) (lunch bag); *State v. Ellis,* 355 S.W.3d 522, 524–25 (Mo. App. 2011) (backpack); *People v. Brown,* 828 N.Y.S.2d 550, 551 (2007) (backpack); *People v. Boff,* 766 P.2d 646, 651–52 (Colo.1988) (backpack). *See generally* Andrea G. Nadel, Annotation, *Lawfulness of Warrantless Search of Purse or Wallet of Person Arrested or Suspected of Crime,* 29 A.L.R.4th § 3[a], at 780 (1984 & 2012 Supp.) (collecting cases).

In other words, under *Robinson*, officers lawfully may search anything that an arrestee actually is holding or wearing at the time of the arrest. But, if the officers extend this search to items in the arrestee's constructive possession, i.e., within the arrestee's reach or control, the "case-by-case" justification of *Chimel* must be met.

The United States Court of Appeals for the Seventh Circuit provided the rationale for the bright-line "time of arrest" test in determining whether a search incident to arrest was a search of the arrestee's person and effects under *Robinson* or a search of the

6

arrestee's surroundings under *Chimel*: "The human anatomy does not naturally contain external pockets, pouches, or other places in which personal objects can be conveniently carried." *United States v. Graham,* 638 F.2d 1111, 1114 (7th Cir.1981).[1] Accordingly, when police seize an arrestee, they necessarily also seize the arrestee's clothing and personal effects in the arrestee's actual possession, all of which may contain a weapon or evidence. *Id. See also United States v. Edwards,* 415 U.S. 800, 806 (1974) (observing that "the police had lawful custody of [the suspect] and necessarily of the clothing he wore"). The time of arrest rule recognizes that the same exigencies that justify searching an arrestee's person under *Robinson* also justify searching the the arrestee's clothes and other items in the arrestee's actual possession. This rule not only adheres to the distinctions drawn by the Supreme Court in *Robinson* and *Chimel*, it is the sort of simple and clear direction this Court should provide whenever possible.

---

[1] The principal opinion states that *Graham* did not hold a purse is part of the person for purposes of a search incident to arrest because the *Graham* court's decision involved the scope of a search authorized by a warrant and recognized that the purse was not part of the person with respect to a search incident to arrest. However, that is not an accurate representation of *Graham*. In *Graham*, the defendant was wearing a purse on his shoulder when he was approached by police officers with a warrant to search his person. 638 F.2d at 1112. One of the officers removed the purse from the defendant and searched the bag. *Id.* The defendant argued that the search of the bag was unlawful because once the bag "was removed from his person," it was "held within the exclusive control of the police." *Id.* The defendant contended that the law governing searches incident to arrest applied, so the warrant authorized only the search of his person, not his purse. *Id.* at 1113. The court addressed the defendant's mistaken understanding of the legitimate scope of a search incident to arrest:

> [E]ven if defendant was correct in his contention that the law governing searches incident to arrest applied, ***the search of his shoulder purse was clearly within the scope of such a search***, and the seizure of the [evidence] would therefore not have been improper.

*Id.* at 1114 (emphasis added).

7

Applying the "time of arrest" rule, the grocery bag was in Carrawell's actual possession at the time of his lawful arrest. Like a backpack on his shoulder or a pants pocket, this bag was "immediately associated with the person of the arrestee" and, therefore, subject to search incident to his arrest without any further justification under *Chimel*. *Chadwick,* 433 U.S. at 15. Even if further justification were required, which it is not, it is present in this case. After Carrawell initiated his confrontation with the police, he reached back into his vehicle to retrieve the grocery bag. While Officer Burgdorf, who was separated from the other officers by a locked gate, was struggling with Carrawell, Carrawell was ordered several times to drop the bag. He refused.

There was no material delay between the time Carrawell was secured and the time Officer Burgdorf looked inside the bag. In fact, the officers were unable to handcuff Carrawell until Officer Burgdorf wrested the bag from Carrawell's hand. Under *Robinson*, Officer Burgdorf surely would have been able to look into the bag as he took it from Carrawell's hand. Such a search would have been lawful but unreasonably dangerous because, even though Carrawell was cuffed, Officer Burgdorf and Carrawell were separated from the other officers by a locked gate. Officer Burgdorf managed to get both Carrawell and the bag through the gate and over to one of the police vehicles but again had to set the bag aside to gain enough control over Carrawell to get him safely into the back of the police vehicle. Immediately thereafter, Officer Burgdorf looked into the bag because it would have been unreasonable to leave it behind and unsafe to bring it into the police vehicle without knowing the nature and condition of the contents.

8

Carrawell argues that the search of the bag was unlawful because, at the time of the search, he was handcuffed in the patrol car, and the bag was in the exclusive control of the officers. Carrawell's understanding of the scope of a search incident to arrest is mistaken:

> [T]o construe the term "exclusive control" as meaning it attaches immediately upon the seizure of an object located on the person or within the immediate vicinity of the arrestee, is a construction incapable of application consistent with fundamental principles of constitutional law. Under such a construction, for example, the warrantless search of an arrestee resulting in the seizure of a wallet, purse, or shoulder bag would prohibit an immediate search of the contents of that type of container, and this is plainly contrary to the law governing searches incident to arrest.

*United States v. Garcia*, 605 F.2d 349, 355 (7th Cir. 1979).

Carawell's construction of exclusive control would swallow completely *Robinson*'s exception to the warrant requirement. Instead, exclusive control "must be construed in the context of its application in *Chadwick*." *Id.* In *Chadwick*, the Supreme Court found that the footlocker was within the exclusive control of officers because the search was conducted at the police station more than an hour after seizure of the footlocker and long after the defendants were securely in custody. 433 U.S. at 15. Since *Chadwick*, lower courts have found the exclusive control analysis does not apply to cases in which the item searched was "immediately associated" with the arrestee at the time of the arrest. *See Garcia*, 605 F.2d 349 (finding it lawful to search two hand-carried suitcases immediately upon arrest); *see also Graham*, 638 F.2d at 1114 (noting that a search of a shoulder purse was within the scope of a search incident to arrest).[2]

---

[2]  The *Graham* court discussed an Illinois case, which the principal opinion mentions to indicate *Graham* cannot be relied on. However, as the Eighth Circuit stated: "We are not troubled by the

Further, to construe "exclusive control" to mean that it attaches the instant an arrestee loses physical contact with the item imposes a warrant requirement unless the search is absolutely contemporaneous with the seizure and both are absolutely contemporaneous with the arrest. Courts have rejected this argument because it is neither workable nor compelled by *Robinson*, *Chadwick* or *Chimel*. A post-*Edwards* case decided on remarkably similar facts, *United States v. Fleming*, 677 F.2d 602, 605 (7th Cir. 1982), upholds a warrantless search of a paper bag the arrestee had in his hand when the arrest was initiated. As with the present case, the arrest in *Fleming* involved a scuffle and the bag was removed from the defendant's hand while the officer was attempting to make the arrest. *Id.* The officer did not search the contents of the bag until the defendant was moved to the street and handcuffed. *Id.* Noting that the case was not governed by *Chadwick*, the *Fleming* court holds that the warrantless search of the bag was lawful because it was incident to the arrest:

> [I]t does not make sense to prescribe a constitutional test that is entirely at odds with safe and sensible police procedures …, unless we intend to use the Fourth Amendment to impose on police a requirement that the search be absolutely contemporaneous with the arrest, no matter what the peril to themselves or to bystanders. It is surely possible for a *Chimel* search to be undertaken too long after the arrest and too far from the arrestee's person. That is the lesson of *Chadwick*. … [A] five-minute delay between seizing [defendant's] bag and opening it, occasioned by [officer's] handcuffing [defendant] and moving with him to the street, [did not] defease[] [officer's] right to search under *Chimel* principles.

---

*Graham* court's tacitly accepting and distinguishing an Illinois case that rejected a station-house search allegedly undertaken incident to an arrest. The Illinois case does not take into account the 1981 decision in *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768. The Illinois courts are currently ruling as we do here." *Curd v. City Court of Judsonia, Arkansas*, 141 F.3d 839, 843 n.11 (8th Cir. 1998).

10

*Id.* at 607-08.[3]

In this case, Carrawell argues that exclusive control over the bag attached once he was put into the patrol car. As discussed in *Garcia*, this is "plainly contrary to the law governing searches incident to arrest." 638 F.2d at 1114. Had Carrawell left the grocery bag in his car, *Chimel* would have required additional justification to search it even if it was within his reach or control at the time of this arrest. But he did not. He grabbed the bag and held onto it throughout the ensuing confrontation and struggle. The grocery bag was as much a part of Carrawell's body and effects as if Carrawell had jammed it into a jacket pocket and Officer Burgdorf had pulled it loose and thrown it to the ground while subduing him. In either case, the search is lawful under *Robinson* because the bag was in Carrawell's actual possession at the time of the arrest. Nothing more is required. The Supreme Court of Washington summarized this law with admirable clarity:

> *Gant* did not enact special constitutional protections for belongings inside cars; it restored the same protections all searches of an arrestee's surroundings enjoy under *Chimel*. *Gant,* 556 U.S. at 343, 129 S.Ct. 1710 (citing *Belton,* 453 U.S. at 460, 101 S.Ct. 2860). ***These protections are no broader than Chimel and do not include the arrestee's person or her personal articles***, even if the arrestee is in a car at the time of arrest. Police may not evade *Gant* by removing an article from a car before searching it, but this is not because the federal and state constitutions specially protect articles in cars. It is because, under *Chimel,* the State must justify the warrantless search *of every* **article not on the arrestee's person or closely associated with the arrestee's person at the time of his or her arrest**. The

---

[3] The Eighth Circuit stated that when an item is seized from the arrestee's person in the course of a lawful arrest, it does not matter whether the arrestee was capable of reaching the item at the time of the search. *Curd*, 141 F.3d at 842 n.9; *see also* 3 W. LaFave, *Search and Seizure*, § 5.3(a) at 193(5th ed. 2012) ("The notion seems to be that *Robinson* recognized that anything on the person was "fair game" for a search, and that the opportunity of the police to search should not be more limited merely because there may have been reasons making a full search there impractical or because the police opted for the less humiliating alternative of a search in the privacy of the stationhouse.") (footnotes omitted).

> distinction does not turn on whether a person is arrested in a car, on the street, or at home, but on the relationship of the article to the arrestee. *See Robinson,* 414 U.S. at 220, 94 S.Ct. 467 (search of the person or vehicle occupants); *Chimel,* 395 U.S. at 753–54, 89 S.Ct. 2034 (search of arrestee's home).

*State v. Byrd*, 310 P.3d 793, 799-800 (2013) (emphasis added).

The principal opinion rejects the bright-line "time of arrest" rule and all the cases applying it because it concludes these cases are contrary to *Edwards*. This is a misapplication of *Edwards,* which, if anything, reinforces the holding of *Robinson* that a search incident to arrest may be made of the arrestee and those effects in the arrestee's actual possession at the time of the arrest without the need for any further justification under *Chimel*.[4]

If, as the principal opinion suggests, *Edwards* requires the police to obtain a warrant to search a wallet or any other item taken from an arrestee's person during the course of a lawful search, then *Edwards* must have overruled *Robinson* (albeit *sub silentio*) because the search of the cigarette package in *Robinson* would have been unlawful under such a rationale. Yet, in the 41 years since *Edwards* was decided, such a dramatic redrawing of the landscape of searches incident to lawful arrests has gone unnoticed and unenforced.

---

[4]  Far from supporting the unprecedented approach taken by the principal opinion, *Edwards* actually holds that the police's **authority** to seize and search items within the arrestee's "immediate possession" is measured at the time of arrest, it does not need to be exercised at that moment. *Edwards,* 415 U.S. at 807. Effects in the arrestee's "immediate possession" at the time of arrest may be searched after the arrestee is safely confined. *Id.* at 801-802 (search of the arrestee's clothes was lawful even though search occurred approximately 10 hours after arrestee was in custody).

12

Even the Supreme Court's most recent relevant decision does not ascribe such a sea change effect to *Edwards*. Instead, in *Riley v. California*, 134 S.Ct. 2473 (2014), the Court reaffirmed its holding in *Robinson* that a lawful arrest – by itself – establishes the authority to search the person and effects of an arrestee even when there are no particularized *Chimel* concerns present at the time of the search. *Id.* (citing *Robinson*, 414 U.S. at 236). "In doing so, the Court ***did not draw a line between a search of [the] person and a further examination of the cigarette pack found during that search***." *Id.* at 2484 (emphasis added).

> Once an officer gained control of the pack, it was unlikely that Robinson could have accessed the pack's contents. But unknown physical objects may always pose risks, no matter how slight, during the tense atmosphere of a custodial arrest. The officer … testified that he could not identify the objects in the cigarette pack …. Given that, ***a further search was a reasonable protective measure***.

*Id.* (Emphasis added and internal citations omitted).

If *Edwards* requires officers to obtain a warrant to search ***all items*** removed from the person of the arrestee during an arrest, as the principal opinion suggests it does, then the Court's discussion in *Riley* of *Robinson* – and its careful efforts in *Riley* to create a cell-phone-sized exception to *Robinson* – would have been unnecessary. Instead, the Court noted that, because such technology was "nearly inconceivable … when *Chimel* and *Robinson* were decided," it was required to re-weigh the arrestee's and the government's interests and – solely due to the unique properties of cell phones – to rule on the side of individual privacy where that is the item taken from the arrestee. *Id.* But, in doing so, the Court specifically noted – and approved – that *Robinson* generally struck this balance in favor of allowing a warrantless search of the arrestee's person and effects

13

with no particularized showing of need: "On the government interest side, *Robinson* concluded that the two risks identified in **Chimel** [i.e., officer safety and preservation of evidence] … ***are present in all custodial arrests***." *Id.* at 2484-85 (emphasis added). As a result, *Riley* reaffirmed the *Robinson-Chimel* distinction, but created a singular exception to *Robinson* for cellphones seized from the person of the arrestee during a lawful arrest; an exception which would not have been necessary (or even logical) if *Reynolds* had the reach and breadth the principal opinion ascribes to it in this case.

Here, Officer's Burgdorf's search of Carrawell's bag occurred mere seconds – not hours – after Carrawell was confined in the back of the police vehicle, and long before Carrawell was safely detained at the police station. Even if *Edwards* does not permit an hours-long delay between the seizure and the search of an item that was taken from the arrestee's actual possession at the time of the arrest, nothing in *Edwards* suggests that the momentary delay between when Officer Burgdorf wrested the bag from Carrawell's grip and when Officer Burgdorf looked into the bag to see what Carrawell had been holding onto so doggedly rendered that search unconstitutional. This was one continuous and potentially dangerous course of action initiated by Carrawell, and the momentary delay between taking the bag from Carrawell and looking into that bag was more than justified by Officer Burgdorf's more pressing obligations of protecting the bystanders, protecting himself and the other officers, and subduing Carrawell.

14

## Conclusion

Because the bag was in Carrawell's immediate possession and seized at the time of the arrest, the search was a lawful search incident to arrest under *Robinson*. On this basis, I would affirm the circuit court's judgment.

_____
Paul C. Wilson, Judge

15



# SUPREME COURT OF MISSOURI
## en banc

STATE OF MISSOURI, )
)
     Respondent, )
)
v. ) No. SC94927
)
DERRICK L. CARRAWELL, )
)
     Appellant. )

## OPINION CONCURRING IN PART AND DISSENTING IN PART

I concur with the principal opinion to the extent it holds that the search was unlawful because it occurred while Mr. Carrawell's belongings were beyond his immediate control. I respectfully dissent from the principal opinion's holding that the exclusionary rule does not apply.

The principal opinion makes a compelling case, based on binding authority from the United States Supreme Court, that the search was unlawful. After establishing that the search was unlawful, the principal opinion holds that the evidence seized from Mr. Carrawell's personal belongings is nonetheless admissible because at least two Missouri court of appeals cases had erroneously held that an arrestee's personal belongings may be searched even when they are not within the immediate control of the arrestee. *See State v. Ellis*, 355 S.W.3d 522, 524 (Mo. App. 2011); *State v. Rattler*, 639 S.W.2d 277, 278 (Mo. App. 1982). As the principal opinion notes, the reasoning in *Ellis*

and *Rattler* misconstrues the individual constitutional right to be free from unreasonable searches. While it is true that the exclusionary rule does not apply when a search is conducted in a manner permitted by existing case law, as the principal opinion demonstrates, the overwhelming weight of authority from the United States Supreme Court establishes that the search was illegal.

Given the overwhelming weight of authority holding that searches such as the one conducted in this case are illegal, the exclusionary rule should apply. The exclusionary rule incentivizes the government to exercise its considerable authority with due regard for constitutionally protected individual rights. If the government can justify illegal searches by parsing through volumes of court of appeals cases until locating an erroneously decided case supporting the desired result, then the incentives provided by the exclusionary rule are diluted. Although Mr. Carrawell's alleged actions do not make him the most sympathetic figure, the fact remains that the constitutional limitations on the government's authority to search and seize private property retain vitality only if those limits are applied rigorously and consistently. Therefore, I would hold that the illegally obtained evidence should have been excluded.

_____
Richard B. Teitelman, Judge